**James ROCAP**

v.

**Victor H. INDIEK and Federal Home Loan Mortgage Corporation, Appellants.**

**No. 75–1806.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 13, 1976.

Decided June 21, 1976.

---

Robert T. Lasky, Washington, D. C., with whom Joseph A. Artabane, Washington, D. C., was on the brief for appellants.

Charles E. Hill, Washington, D. C., with whom Victor H. Kramer, and Richard B. Wolf, Washington, D. C., were on the brief for appellee.

Before BAZELON, Chief Judge, TAMM, Circuit Judge and JUSTICE,* United States District Judge for the Eastern District of Texas.

Opinion for the Court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

## I. INTRODUCTION

The single major issue presented by this case is whether the Federal Home Loan Mortgage Corporation (hereinafter "FHLMC" or "Corporation") is required by the Freedom of Information Act, 5 U.S.C. § 552 (1974) (hereinafter "FOIA" or the "Act"), to publish certain information in the Federal Register and to compile and make available to the public a current index of various corporate materials and information.[1] The Corporation need comply with the Act only if it can be deemed an "agency" within the recently expanded definition of section 552(e). Subsection (e), added in 1974 as part of a comprehensive Congressional effort to fortify and expand coverage of the Act, provides:

> For purposes of this section, the term "agency" as defined in Section 551(1) of this title includes any executive department, military department, Government corporation, *Government controlled corporation,* or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

5 U.S.C. § 552(e), added to FOIA by P.L. 93–502 (November 21, 1974) (emphasis added).

Plaintiff-appellee James Rocap[2] ("Rocap") contends that FHLMC is a "Government controlled corporation," and hence subject to the disclosure and reporting requirements of the Act. The district court, the Honorable Aubrey E. Robinson, Jr. presiding, granted Rocap's motion for summary judgment and ordered the Corporation to comply with the Act,[3] but stayed the operative portions of his order pending the out-

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. In general terms, section 552(a)(1) requires any federal "agency" to publish in the Federal Register general descriptions of its organization, decisional procedures, substantive rules and policy. Section 552(a)(2) requires the agency to make available for public inspection and copying its opinions, statements of policy, interpretations, administrative staff manuals and instructions.

2. Rocap alleged in his Complaint that, at the time this action was filed, he was a law student at the Georgetown University Law Center who,

in the course of his studies, had developed a "strong interest in administrative law." His desire to study the activities of the Corporation was frustrated, he claimed, when he learned that the Corporation did not consider itself subject to FOIA and accordingly had not published information in the Federal Register or compiled certain indexes. Upon learning of the Corporation's position, he instituted this action for declaratory and injunctive relief to compel the Corporation to comply with the Act.

3. The District Court ordered the Corporation: (1) Promptly [to] file in the Office of the Federal Register and separately state and

come of this appeal. Because we believe the legislative history of the 1974 Amendments mandates the conclusion that Congress intended to extend FOIA to certain hybrid governmental/private entities like the Corporation, we affirm.

## II. SUMMARY OF THE ARGUMENTS

▪ In support of the contention that FHLMC is subject to the reporting and disclosure requirements of the Act, Rocap argues that the Corporation shares many of the following attributes characteristic of other quasi-federal entities clearly intended to be included within the "Government controlled corporation" language: the Corporation is chartered solely under federal law, and not according to the laws of any state; its Board of Directors consists solely of federal officers; its operations are tightly controlled by statute; and, at least for some purposes, it is treated by Congress as the equivalent of a federal agency, its employees as "officers or employees of the United States." Rocap Brief at 6.

The Corporation argues in response that it is less subject to federal control than the Corporation for Public Broadcasting ("CPB"), specifically mentioned by the Senate Conference Report as outside the reach of the 1974 Amendments,[4] and that Congress intended it to function essentially as a private corporation. In support of this theory, the Corporation points out that it receives no appropriated funds—its operations are financed solely by virtue of its initial capital, profits generated from operations, and borrowings in the capital mar-

kets. In addition, its expenditures are not subject to regular Congressional budget review, and its obligations are in no way guaranteed by the federal government. The Corporation's Board of Directors is composed of the three members of the Federal Home Loan Bank Board, who receive no additional compensation for their service to the Corporation, 12 U.S.C. § 1452(a), and its capital stock is non-voting and held solely by the twelve Federal Home Loan Banks. FHLMC Brief at 6. Thus, the Corporation argues that its federal characteristics no more require the conclusion that it is a "Government controlled corporation" than in the case of national banks or federally-insured savings and loan associations, also entirely creatures of federal law. See 12 U.S.C. § 24 (national banks) and 12 U.S.C. § 1464 (federally-chartered savings and loan associations).

The Corporation further contends that the language and legislative history of the 1974 Amendments demonstrate that it is not subject to FOIA. For this argument, the Corporation relies on two provisions added in 1974 in order to increase the overall effectiveness of the Act. The first, added as subparagraph (4)(E) to section 552(a), permits a court to assess against the United States attorneys' fees and costs for any complainant who has "substantially prevailed" in a FOIA action. FHLMC refers us to the House Committee Report, which states that the allowable fees and costs are to be payable "out of Government funds." FHLMC Brief at 10, citing H.R.Rep.No.93–876, 93d Cong., 2d Sess., as reprinted in 1974 U.S.Code Cong. & Admin.News 6267.[5] The

---

publish in the Federal Register the information described in 5 U.S.C. § 552(a)(1); and (2) Promptly [to] make available for public inspection and copying the information described in 5 U.S.C. § 552(a)(2)(B) and (C) and otherwise comply with 5 U.S.C. § 552(a)(2). J.A. A–37.

**4.** The Conference Report states in pertinent part:

The conference substitute follows the House bill. The conferees state that they intend to include within the definition of "agency" those entities encompassed by 5 U.S.C. 551 and other entities including the United States Postal Service, the Postal Rate Commission,

and government corporations or government-controlled corporations now in existence or which may be created in the future. They do not intend to include corporations which receive appropriated funds but are neither chartered by the Federal Government nor controlled by it, such as the Corporation for Public Broadcasting.

S.Conf.Rep. No. 93–1200, 93d Cong., 2d Sess. 14–15 U.S.Code Cong. & Admin.News 1974, pp. 6267, 6293 (1974).

**5.** Similarly, the Senate Committee stated that fees and costs "would be payable from the budget of the agency involved as party to the

Corporation would have us interpret this provision as an indication that Congress intended the new definition of "agency" to extend only to entities which receive appropriate funds or whose budgets are approved by Congress. The second provision upon which FHLMC relies permits courts in FOIA cases, under certain circumstances, to direct the Civil Service Commission to initiate an investigation into whether a public official who wrongfully withholds information should be disciplined. 5 U.S.C. § 552(a)(4)(F). Pursuant to this provision, the Commission then "shall submit its findings and recommendations to the administrative authority of the agency concerned," and the "administrative authority shall take the corrective action that the Commission recommends." The Corporation argues that this provision demonstrates a Congressional intent that only those agencies whose employees are subject to Civil Service Commission jurisdiction be subject to the Act.[6]

We agree with the Corporation that the mere presence of a federal charter, by itself, does not compel the conclusion that an entity is a "Government controlled corporation" and therefore an "agency" subject to FOIA. We believe it clear, however, that the Corporation is subject to such substantial federal control over its day-to-day operations that the dividing line for FOIA purposes must be drawn between national banks and federally-insured savings and loan associations, not covered by FOIA, and

entities like the Corporation which, we believe, were intended to be included within the 1974 expansion. We reject the Corporation's argument that its similarity in organizational characteristics to the Corporation for Public Broadcasting indicates that Congress intended to exempt it and other similarly-constituted quasi-public entities. We also reject the Corporation's argument that Congress intended the expanded definition to reach only those entities specifically mentioned in the Senate and Conference Reports. *See* FHLMC Brief at 16, *referring* to S.Conf.Rep.No.93–1200, 93d Cong., 2d Sess. 17 (1974); S.Rep.No.93–854, 93d Cong., 2d Sess. 33 (1974). The CPB was exempted for reasons which have little, if anything, to do with its organizational structure; the entities specifically mentioned in the Reports admittedly areas of primary Congressional concern, were by no means inclusive. We turn now to a brief examination of the legislative history behind the 1974 Amendments.

## III. LEGISLATIVE HISTORY OF THE EXPENDED COVERAGE, DISCIPLINARY, AND ATTORNEYS' FEES PROVISIONS

The legislative history of the 1974 Amendments to FOIA reveals that Congress intended to strengthen the Act and expand its coverage to include quasi-governmental entities like the Postal Service, Amtrak, the Federal Deposit Insurance

litigation." S.Rep.No. 93–854, 93d Cong., 2d Sess. 17 (1974).

**6.** The Corporation points out in its brief that section 303(b)(9) of the FHLMC Act, 12 U.S.C. § 1452(b)(9), expressly permits the Corporation to hire and compensate its employees "without regard to any other law," and that

[t]he corporation's employees are not under a GS or similar schedule, are not subject to the Classification Act, are not eligible for Civil Service retirement and other benefits, and may be released from employment at will even if they are veterans. A civil servant must resign from the Civil Service before joining the corporation's staff. The corporation's employees are, in short, as much private employees as are the employees of any other ordinary private business corporation.

FHLMC Brief at 8. We find equally relevant, however, section 308(e) of the FHLMC Act, relating to penal provisions, which provides:

(e) The terms "agency" and "agencies" shall be deemed to include the Corporation whenever used with reference to an agency or agencies of the United States in sections 201, 202, 203, 205, 207, 208, 209, 286, 287, 371, 506, 595, 602, 641, 654, 701, 872, 1001, 1002, 1016, 1017, 1361, 1505, and 2073 of such Title 18. Any officer or employee of the Corporation shall be deemed to be a person mentioned in section 602 of such Title 18 [officer or employee of the United States] within the meaning of sections 603 and 606 of such title.

12 U.S.C. § 1457(e).

Corporation and, we conclude, the Corporation. As appellant points out, the Senate Conference Report specifically mentioned the United States Postal Service and the Postal Rate Commission. *See* S.Conf.Rep. 93–1200, 93d Cong., 2d Sess. 14–15 (1974). The Senate Report adds to the list the National Rail Passenger Corporation (Amtrak). *See* S.Rep.No.93–854, 93d Cong., 2d Sess. 33 (1974). We reject appellant's suggestion, however, that this properly indicates an intent that the Act extend only to these named agencies. It is clear in the case of the Postal Service, for example, that specific mention was deemed necessary because the Service previously had taken the position that, absent specific inclusionary language, any amendments to FOIA "would not apply to the Postal Service." Senate Report, *supra.*

Similarly, the CPB was excluded in response to specific objections raised when the bill [7] was reported which had little or nothing to do with its organizational characteristics. As originally reported, the phrase "Government controlled corporation," as used in the House bill, included "a corporation which is *not* owned by the Federal Government, such as the National Railroad Passenger Corporation (Amtrak) *and the Corporation for Public Broadcasting* (CPB)." H.R.Rep.No.93–876, 93d Cong., 2d Sess. 7–8, U.S.Code Cong. & Admin.News 1974, p. 6274 (1974) (emphasis added). This version met substantial opposition during the House debate. Representative Van Deerlin of California, deeply troubled by the CPB's inclusion, stated:

> The Corporation for Public Broadcasting, as the gentleman [Rep. Moorhead of Pennsylvania] knows, was created by

Congress as a means of pumping Federal money into broadcasting without having Federal control over broadcasting.

.     .     .     .     .

> This was by no means intended to be a Government information agency or Government broadcasting agency. I know the gentleman in the well feels as strongly as I do the necessity of protecting the Corporation for Public Broadcasting against the intrusion of political action.

120 Cong.Rec. 1789 (1974) (remarks of Representative Van Deerlin). Representative Moorhead responded to this expression of concern, saying, "I would say to the gentleman that if in fact of law the Public Broadcasting Corporation is not a Government controlled corporation, then the words of the statute and not the words of the report would control." Representative Van Deerlin then remarked that he was "glad for the opportunity the chairman of the subcommittee [had] provided to make legislative history of this." *Id.*[8] It was apparently as a consequence of this opposition that the Conference Report "clarified" the intent of Congress and specifically stated that the new definition would not include "corporations which receive appropriated funds but are neither chartered by the Federal Government nor controlled by it, such as the Corporation of Public Broadcasting." S.Conf.Rep. at 14–15. It is also interesting to note that, while the Senate version of the "agency" definition was limited to the Postal Service, the Postal Rate Commission, and "any other authority of the Government of the United States which is a corporation *and which receives any appropriated*

---

7. H.R. 12471, 93d Cong., 2d Sess. (1974).

8. This same objection was voiced again as the bill was debated, this time by Representative Brown of Ohio, who insisted that

> the House should make clear that the Corporation for Public Broadcasting is not intended to be covered within the expanded definition of "agency" which is part of this amendment. . . . The Public Broadcasting Act of 1967 expressly provided that the Corporation is not to be "an agency or establishment of

the U.S. Government." Rather it is a private, independent corporation incorporated pursuant to the District of Columbia Nonprofit Corporation Act. Although Congress was desirous of supporting public broadcasting with Federal funds in 1967, it was keenly aware that it would be inappropriate—constitutionally and otherwise—for the Government itself to perform the support activities that it envisioned for the corporation.

120 Cong.Rec. 1797 (1974).

*funds"*, the conference substitute followed the broader House version. *See* H.R.Conf. Rep.No.93–1380, 93d Cong., 2d Sess. 14–15 (1974). It thus appears that the CPB was excluded for reasons related to First Amendment concerns having little to do with its organizational structure, and that there is no support in the legislative history for the proposition that the definition was intended to cover only those quasi-governmental corporations mentioned in the House and Senate Reports.

█ We find equally unconvincing appellant FHLMC's arguments that the passage in 1974 of the provisions relating to payment of attorneys' fees and costs by the United States and to Civil Service sanctions against governmental employees who wrongfully withhold information indicates that Congress intended to include only those "agencies" which receive appropriated funds and whose employees are subject to Civil Service Commission jurisdiction. The Senate Report indicates that the primary purpose of including the sanction provision was to counterbalance existing sanctions against unauthorized disclosure of information—to balance incentives by instilling a motion of accountability to uproot the self-protective bureaucratic attitude of "when in doubt withhold." S.Rep.No.93–854, 93d Cong., 2d Sess. 21–23 (1974) (quoting testimony of Messrs. Ralph Nader and Ronald Plesser). We can find no reason to conclude that Civil Service Commission jurisdiction is a prerequisite to agency status for the purposes of section 552(e), however. Indeed, several recognized agencies are, or have been, outside the Civil Service Commission's jurisdiction, including Amtrak, specifically mentioned in the Senate Report (*see* 45 U.S.C. § 541 (1970)), the Tennessee Valley Authority (*see* 16 U.S.C. § 831b (1970)), the Atomic Energy Commission (*see* 42 U.S.C. § 2201, 10 C.F.R. § 9.1), and the Federal Reserve Board (*see* 12 U.S.C. § 248(*1*), 12 C.F.R. § 261). The language of the sanction provision also does not require

that the Civil Service Commission directly sanction the employee. The Commission need only make a recommendation to the agency, which then acts upon it. Finally, the provision was intended to reach only "extraordinary and egregious cases." U.S. House of Representatives, Committee on Government Operations, 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974 at 173 (Comm. Print 1975).

The costs and fees provision was intended both to remove an impediment which had become a serious disincentive to invocation of the Act and to force agencies to consider their chances of prevailing in court before routinely resisting requests for disclosure of information.[9] The award of such costs and fees is, of course, discretionary with the court where a FOIA petitioner has "substantially prevailed." The Corporation relies on the House Report, which states that such fees are to be payable "out of Government funds." H.R.Rep.No.93–876, 93d Cong., 2d Sess. 6 (1974). The final Conference bill adopted the Senate version, however, which provided that such fees would be payable "*from the budget of the agency involved. . . .*" S.Rep.No.93–854, 93d Cong., 2d Sess. 17 (1974) (emphasis added). There are, in fact, a number of other "agencies," clearly subject to the Act, which also receive no appropriated funds, including the Federal Home Loan Bank Board, 12 U.S.C. §§ 1437, 1438, 12 C.F.R. § 505; the Federal Deposit Insurance Corporation, 12 U.S.C. § 1818, 12 C.F.R. § 309; and the Federal Reserve Board, 12 U.S.C. § 242, 12 C.F.R. § 261.

In short, Congress tailored these provisions to fit *most* situations, logically relying on the Civil Service Commission for discipline of government employees and on the court for assessment of costs and attorneys' fees against the "United States." These provisions, like the expansion of the definition of agency, are part of an overall Congressional effort to make FOIA more effec-

---

**9.** Absent explicit statutory authority, attorneys' fees will not ordinarily be assessed against the Government. *See* 28 U.S.C. § 1920 (1966).

*See generally* 6 Moore's Federal Practice ¶ 54.-77 (1975 ed.).

tive.[10] We find no reason to expect perfect concurrence between the new provisions or to demand easy, mechanical application of them to a multitude of varying organizational structures.

Finally, the Corporation argues that the Act should not be applied to FHLMC as a matter of policy because its activities are open, because it already makes available large quantities of materials, and because its activities are highly technical in nature and thus are of little interest to the public. The administrative costs of complying with the Act's procedural requirements would be substantial, would necessarily reduce the Corporation's operating capital, since it receives no appropriated funds, and, according to the Corporation, would produce few corresponding benefits. FHLMC Brief at 18–26. The short answer to this argument is that, by enacting the Freedom of Information Act, Congress determined that the benefits to be derived from "open government" outweighed the costs and that these costs would, and should, be absorbed within the operating budgets of the agencies. H.R.Rep.No.93–876, 93d Cong., 2d Sess. 9 (1975). Moreover, by enacting the Freedom of Information Act, Congress rejected the contention that voluntary agency disclosure is sufficient to guarantee "the right of persons to know about the business of their government," H.R.Rep.No.93–876, 93d Cong., 2d Sess. 4 (1974), U.S.Code Cong. & Admin.News 1974, p. 6269, and opted instead "to permit access to official information long shielded unnecessarily from public view and . . . to create a judicially

enforceable public right to secure such information from possibly unwilling official hands." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). The Corporation's "openness" therefore cannot relieve it from its obligation to publish and index those materials required by the Freedom of Information Act.[11]

## IV. CONCLUSION

The organizational structure of the Corporation exhibits many characteristics similar to those of other governmental entities subject to the Freedom of Information Act. It is federally chartered, its Board of Directors is Presidentially appointed, it is subject to close governmental supervision and control over its business transactions, and to federal audit and reporting requirements. In addition, the Corporation is expressly designated an "agency," and its employees are officers and employees of the United States, for a number of purposes. Like other agencies, it is empowered "to make and enforce such bylaws, rules, and regulations as may be necessary or appropriate to carry out the purposes or provisions of [its enabling act]." 12 U.S.C. § 1452(b)(3).

The existence of any one of these characteristics, by itself, would not be sufficient to trigger applicability of section 552(e), but these are the kinds of indicia of federal involvement and control which courts have generally relied upon in determining whether an entity is a federal agency.[12] Taken

10. The Corporation relies upon the well-accepted principle that

> a section of a statute should not be read in isolation from the context of the whole Act, and that in fulfilling our responsibility in interpreting legislation, "we must not be guided by a single sentence or member of a sentence, but [should] look to the provisions of the whole law, and to its object and policy.

FHLMC Brief at 11, *quoting Richards v. United States*, 369 U.S. 1, 11, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962) (footnotes omitted). We agree with the principle but find it misapplied in this instance where the expansive "object and policy" of the whole Act as amended in 1974 appears to conflict with the Corporation's piecemeal reading.

11. It is doubtful that the Corporation's activities are more highly technical or of less interest to the public than the activities of many other agencies, e. g., those of the Federal Home Loan Bank Board, whose three members make up the Corporation's Board of Directors, or those of the Federal Deposit Insurance Corporation.

12. For example, in determining whether the Federal Deposit Insurance Corporation was a federal agency within the definition of the Federal Tort Claims Act, which includes "corporations primarily acting as instrumentalities or

together, we believe that the Corporation's federal characteristics dictate the conclusion that it is the kind of federally created and controlled entity which Congress sought to bring within the scope of the "Government controlled corporation" language of 5 U.S.C. § 552(e).

For the above reasons, we conclude that appellant Federal Home Loan Mortgage Corporation is an "agency" for the purposes of the Freedom of Information Act. The order of the district court is hereby affirmed.

*So ordered.*

agencies of the United States," 28 U.S.C. § 2671 (1966), a district court stated:

It seems beyond argument that the statute 12 U.S.C.A. § 1811 et seq. creating the Federal Deposit Insurance Corporation, plainly establishes the corporation as a federal agency. The statute provides in part: that the President will appoint two of the three members of the Board of Directors; certain investments of the corporation must first have the approval of the Secretary of the Treasury; and the corporation is required to report annually to Congress as to its financial condition.

*Freeling v. Federal Deposit Insurance Corporation,* 221 F.Supp. 955, 956 (W.D.Okl.1962), *aff'd* 326 F.2d 971 (10th Cir. 1963). We believe this to be a sound approach and find it appropriate for resolution of the issues *sub judice. See also United States v. Orleans,* —— U.S. ——, ——, 96 S.Ct. 1971, 1973, 48 L.Ed.2d 390, 44 U.S.L.W. 4700, 4703 (1976).