**LIBERTY MORTGAGE BANKING, LTD., Kenneth A. Ashley & Yoel Movtady, Plaintiffs,**

v.

**FEDERAL HOME LOAN MORTGAGE CORPORATION, d/b/a Freddie Mac, Defendant.**

**No. CV 90–4046.**

United States District Court, E.D. New York.

May 28, 1993.

Speno, Goldman, Goldberg, Steingart & Penn, P.C. by Peter Sullivan, Mineola, NY, for plaintiffs.

Elizabeth Sullivan, McLean, VA, for defendant.

### ORDER

WEXLER, District Judge.

Liberty Mortgage Corp. ("Liberty" or "plaintiff"), brought suit against the Federal Home Loan Mortgage Corp. ("Freddie Mac" or "defendant") alleging that Freddie Mac violated its due process rights under the Fifth Amendment of the Constitution when it terminated Liberty's service agreement. Plaintiff also brought suit against Freddie Mac under 42 U.S.C. § 1983 and the New York state constitution alleging that Freddie Mac violated Liberty's due process rights when it seized Liberty's servicing portfolio pursuant to state sanctioned U.C.C. proce-

dures. Presently before the Court is Freddie Mac's motion for partial summary judgment with respect to both the federal and state due process claims. Freddie Mac claims that summary judgment must be granted in its favor because it is neither a federal or state actor. Because this Court agrees with defendant and finds that Freddie Mac is neither a federal actor nor a state actor, summary judgment is granted in favor of defendant.

### I. BACKGROUND

On or about July 16, 1985, Liberty entered into an agreement with Freddie Mac to become one of its sellers/servicers. As a seller/servicer, Liberty entered into Master Commitments to sell mortgages secured by residential real property to Freddie Mac and to "service" those mortgages on behalf of Freddie Mac; that is, to collect and remit monthly payments of principal, interest and escrow (for taxes and insurance). In return for servicing the mortgages, Liberty received a yearly fee that typically ran between ¼% to ⅜% of a loan's value. Plaintiff alleges that Freddie Mac violated its due process rights when Freddie Mac terminated plaintiff as a seller/servicer and seized its servicing portfolio without any factual findings with respect to plaintiff's servicing procedures. Freddie Mac contends that it terminated Liberty after an investigation and audit revealed significant irregularities, quality control problems and fraud in connection with the sale and servicing of the Freddie Mac loan portfolio.

The narrow issue presented for review in this case is whether Freddie Mac is a federal or state governmental actor for the purposes of triggering due process protections. Freddie Mac is a government-sponsored enterprise [1] ("GSE") whose statutory mission is to provide ongoing assistance to the secondary market for home mortgages, including mortgages securing housing for low and moderate income families. 12 U.S.C. §§ 1451–1455.

Freddie Mac was initially chartered by Congress to facilitate the expansion and im-

1. "Congress created government-sponsored enterprises to help make credit reliably available to ... homeowners [and others].... Congress made the enterprises privately owned and operated, limited their activities to specific economic sectors, and gave them benefits to help accomplish their public purpose." United States General Accounting Office Report, No. GAO/GGD–91–90 at 2.

prove the geographic distribution of credit for residential mortgages. Federal Home Loan Mortgage Act, Pub.L. No. 91–351 Title III, s. 302, 84 Stat. 451 (1970) (codified as 12 U.S.C. §§ 1451–59). At the time of its initial charter, Freddie Mac was entitled to the priorities and immunities of the United States, including tax exempt status. However, in 1989, Congress amended Freddie Mac's enacting statute and significantly altered both its corporate structure and its relationship with the United States.[2] Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, s. 731, 103 Stat. 430 (codified at 12 U.S.C. §§ 1811–1833e) (hereinafter referred to as FIRREA). All of the actions complained of by plaintiffs took place well after enactment of the 1989 amendments by FIRREA.[3]

The legislative history of FIRREA suggests that the purpose of the 1989 amendments was to privatize the management and operations of Freddie Mac.[4] Indeed, Freddie Mac is now owned by private shareholders.[5] Prior to FIRREA, the Freddie Mac Board of Directors consisted exclusively of three members of the Federal Home Loan Bank Board, appointed by the President and confirmed by the Senate. Following FIRREA, the Board of Directors consists of 18 members, 13 of whom are elected annually by the private shareholders. A minority of 5 Board members are appointed by the President. None are government officials. 12 U.S.C. § 1452(a)(2)(A).

In addition, FIRREA replaced direct government control over Freddie Mac's operations with limited regulatory oversight by the Department of Treasury and the Department of Housing and Urban Development.[6] The legislative history makes clear that this regulatory authority is not to constitute detailed, day-to-day supervision of Freddie Mac's business decisions. See H.R.Rep. No. 54(III), 101st Cong., 1st Sess., reprinted in 1989 U.S.Code Cong. & Admin. News 385.

## II. DISCUSSION

### A. Freddie Mac's Termination of Liberty Was Not Federal Action

■ The threshold consideration for invoking federal constitutional protection is that federal governmental action is involved. Purely private action does not trigger any constitutional protections. San Francisco Arts & Athletics Inc. v. United States Olympic Comm., 483 U.S. 522, 542, 107 S.Ct. 2984, 2971, 97 L.Ed.2d 427 (1987). Since 1989, Freddie Mac has the attributes of a private corporation, not a government agency. The mere fact that Congress issued its corporate charter does not negate the fact that Freddie Mac is an essentially private entity. See id. at 543–44, 107 S.Ct. at 2985 ("The fact that Congress granted [the United States Olympic Committee] a corporate charter does not

---

2. Section 177(a) of the Deficit Reduction Act of 1984, Pub.L. 98–369, had previously eliminated Freddie Mac's federal tax exempt status.

3. Plaintiff does not dispute that it was terminated after the 1989 amendments. In a supplemental letter to the Court, however, plaintiff notes that it initially entered into its relationship with Freddie Mac prior to the 1989 amendments. Because the acts complained of occurred after 1989, Freddie Mac's status, as either a governmental or private actor, must be determined by reference to its post-FIRREA composition.

4. One of the principal sponsors of the FIRREA provisions, Senator Alphonse D'Amato of New York, stated that "the thrift industry will be made stronger, safer and sounder by privatizing the governance of Freddie Mac." 135 Cong.Rec. 10,213 (Aug. 4, 1989) (emphasis added). See also H.R.Rep. No. 54(III), 101st Cong., 1st Sess., reprinted in 1989 U.S.Code Cong. & Admin.News 86 (FIRREA's restructuring will result in a reduction in government control of Freddie Mac).

In fact, the 1989 amendments were designed to mirror the amendments made in 1968 which privatized the Federal National Mortgage Association ("Fannie Mae"). Id. In 1968, Congress altered the corporate structure of Fannie Mae to privatize its ownership and management. The legislative history to the 1968 Fannie Mae legislation makes clear the intent to make Fannie Mae a government-sponsored private corporation. See H.R.Rep. No. 1585, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Admin.News 2873.

5. The corporation has issued approximately 60 million common shares of stock which are publicly traded on the New York Stock Exchange.

6. For example, the Treasury Department has authority to approve certain sales of debt and mortgage related securities. 12 U.S.C. § 1455(j), (k). The Secretary of HUD has approval powers over transactions in new kinds of conventional mortgage programs. 12 U.S.C. § 1452(b)(1), (7).

render the USOC a government agent. All corporations act under charters granted by a government, usually by a state. They do not thereby lose their essentially private nature."); *Delaigle v. Federal Land Bank of Columbia,* 568 F.Supp. 1432, 1439 (S.D.Ga. 1983) (fact that Congress chartered land bank insufficient to make it a government agency).

■ Moreover, the fact that Freddie Mac is extensively regulated by the federal government also does not transform it into a government actor. To attribute Freddie Mac's decision to terminate Liberty to the federal government, this Court would have to find either that "there is a sufficiently close nexus between the [government] and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the [government] itself," *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974) (citing *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 176, 92 S.Ct. 1965, 1973, 32 L.Ed.2d 627 (1972)), or that the government "so far insinuated itself into a position of interdependence with [Freddie Mac] that it was a joint participant in the enterprise." *Jackson,* 419 U.S. at 357–58, 95 S.Ct. at 457 (citing *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961)).

In *Myron v. Consolidated Rail Corp.,* 752 F.2d 50, 55 (2d Cir.1985), the Second Circuit found that Conrail, was not a federal actor. Conrail, like Freddie Mac, is chartered by Congress. It relies heavily on federal funds and the federal government not only regulates it, but also monitors its financial performance. Additionally, the federal government owns 85% of Conrail's preferred stock and six of the thirteen people who sit on its board of directors represent the federal government. Finally, in 1981, Congress passed legislation directing the sale of Conrail's properties, regardless of the wishes of Conrail's management. *Id.*

Despite the substantial federal involvement in Conrail's affairs, the *Myron* court held that the federal government had not sufficiently insinuated itself into the affairs of Conrail to be considered a joint participant with the private entity. Given that the federal government is much more involved in Conrail's affairs than with Freddie Mac's, this Court is compelled to conclude that the federal government is not a joint participant with Freddie Mac. *See also Anderson v. National Rail Passenger Corp.,* 754 F.2d 202 (7th Cir.1984) (Amtrak is not a government agency for purposes of the Fifth Amendment despite congressional charter and 6 out of 9 directors being government officers).

Moreover, plaintiff does not allege that the federal government in any way compelled Freddie Mac's action. Indeed, there is no allegation that any federal employee or official participated in, or even had any prior knowledge of, Freddie Mac's decision to terminate Liberty. Additionally, no federal agency exercises any oversight or regulatory control over the day-to-day decision making of Freddie Mac. Thus, there is not a sufficiently close nexus between Freddie Mac's decision to terminate Liberty and the federal government to treat the termination as government action. *See Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982) (Absent a showing that the United States "exercised coercive power or ... provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State," a regulated agency's decision does not trigger due process protections.).

Although neither the Supreme Court nor any of the Courts of Appeals have ruled on Freddie Mac's status since the 1989 amendments,[7] the federal courts have uniformly held that Fannie Mae and the Government National Mortgage Association ("Ginnie Mae"), two closely analogous GSE's are not engaged in state action when they undertake various activities. *See e.g., Warren v. Government Nat'l Mortgage Assoc.,* 611 F.2d

---

7. Plaintiff relies on *Rocap v. Indiek,* 539 F.2d 174 (D.C.Cir.1976), as support for its claim that Freddie Mac is a government actor. The *Rocap* court held that Freddie Mac was a "government-controlled corporation" for purposes of the Freedom of Information Act. Because *Rocap* was decided before the 1989 amendments, this Court finds that the case is irrelevant to the present controversy.

1229, 1233 (8th Cir.) (foreclosure action taken by Ginnie Mae which is wholly owned by the United States is not "so closely linked to federal government regulation that it can in actuality be viewed ... as the action of the federal government...."), *cert. denied,* 449 U.S. 847, 101 S.Ct. 133, 66 L.Ed.2d 57 (1980); *Roberts v. Cameron-Brown Co.,* 556 F.2d 356, 358–60 (5th Cir.1977); *Northrip v. Federal Nat'l Mortgage Assoc.,* 527 F.2d 23, 30–33 (6th Cir.1975). *See also Federal Nat'l Mortgage Assoc. v. Scott,* 548 S.W.2d 545 (Mo.1977), *app. dismissed,* 436 U.S. 924, 98 S.Ct. 2816, 56 L.Ed.2d 766 (1977). *But see Samuel T. Isaac & Assoc. v. Federal Nat'l Mortgage Assoc.,* 647 S.W.2d 495 (Ky.App. 1982) (state intermediate appellate court summarily concluded that Fannie Mae's actions had assumed the character of government action).

As far as this Court can tell, the only three district courts to have considered whether Freddie Mac is a governmental actor since FIRREA was enacted all found that Freddie Mac was not a federal actor. In *FBMC Fin., Inc. v. Federal Home Loan Mortgage Corp.,* No. 91 cv. 1226–R (S.D.Cal. Sept. 26, 1991), the court, relying on *Myron* and *Anderson,* stated that it could not "find a sufficient nexus between Freddie Mac's actions [terminating a seller/servicer] and the federal government to support the invocation of Fifth Amendment due process analysis." *FBMC Financial,* at 5. *Accord The Mortgage Network, Inc. v. Federal Home Loan Mortgage Assoc.,* No. CV 93–303 (C.D.Cal. May 11, 1993); *American Bankers Mortgage Corp. v. Federal Home Loan Mortgage Assoc.,* No. 93–cv–1168 (C.D.Cal. May 3, 1993). Because this Court agrees that Freddie Mac is not a federal actor, summary judgment with respect to Liberty's Fifth Amendment claims is granted in favor of defendant.

B. *Freddie Mac's Seizure of Liberty's Service Portfolio Was Not State Action*

■ Defendant also seeks summary judgment with respect to Liberty's due process

claims brought under 42 U.S.C. § 1983 and the New York State Constitution. In order to state a claim under § 1983, plaintiff must establish that defendant, acting under color of state law, deprived plaintiff of a right protected by the Constitution or laws of the United States. In order to state a claim under the New York State Constitution's due process clause, plaintiff must also establish that defendant was a state actor when it terminated Liberty. *Sharrock v. Dell Buick–Cadillac, Inc.,* 45 N.Y.2d 152, 408 N.Y.S.2d 39, 379 N.E.2d 1169 (Ct.App.1978). Although the two claims seem to be identical, New York courts have held that "the mere fact that an activity might not constitute State action for the purposes of the Federal Constitution does not perforce necessitate that the same conclusion be reached when that conduct is claimed to be violative of the State Constitution.[8] *Id.* 408 N.Y.S.2d at 43, 379 N.E.2d at 1173. In other words, there is a possibility that Freddie Mac's actions can be deemed state action under the state constitution and private action under the federal Constitution.

In its complaint, plaintiff failed to allege how Freddie Mac can be viewed as a state actor. In oral argument before this Court, plaintiff suggested that defendant employed New York State Uniform Commercial Code provisions to seize its servicing portfolio. Plaintiff now claims that "Liberty's servicing portfolio was transferred not only in violation of various UCC's filed by other third-party lenders under New York law, but with complete disregard as to affording Liberty an opportunity to be heard prior to the deprivation...." Pl.Mem. in Opp. at 9. Although plaintiff failed to specify which provisions were used or violated, even after this Court instructed the parties to brief the issue, it still claims that defendant's use of these unnamed state procedures somehow transformed Freddie Mac from a private actor to

---

8. The *Sharrock* court stated that it would apply a more flexible standard to find state action under the New York constitution than the standard currently imposed by the Supreme Court with respect to the federal Constitution. *Sharrock,* 408 N.Y.S.2d at 44, 379 N.E.2d at 1173. The

basic test for finding state action under the New York constitution is, however, similar to the test employed in the federal context. A court must look to see whether "New York has so entwined itself into the [conduct] as to constitute sufficient and meaningful State participation...." *Id.*

a state actor under both the federal and state constitutions.

Freddie Mac argues that it did not act under the U.C.C. or any other state procedure in taking the termination action and seizing plaintiff's servicing portfolio. Rather, it argues that Liberty was terminated as a servicer pursuant to the terms of the contract between the parties. Moreover, Freddie Mac argues that even if it had acted pursuant to Article 9 of the U.C.C., New York courts have held that a creditor repossessing collateral pursuant to Article 9 is not engaged in state action under the federal Constitution.[9] *See Jefferds v. Ellis*, 132 A.D.2d 321, 522 N.Y.S.2d 398 (4th Dep't 1987), *app. dismissed*, 70 N.Y.2d 1002, 526 N.Y.S.2d 438, 521 N.E.2d 445, (1987).

Furthermore, plaintiff has not directed this Court to any authority to support its theory that a private entity's use or violation of a U.C.C. provision is sufficient to transform a private actor into a state actor under the state constitution. All plaintiff has done is make vague allegations, unsupported by any facts, that Freddie Mac acted pursuant to or in violation of some state law. Without more, there is no way to determine the degree, if any, of state involvement in Freddie Mac's decision to terminate Liberty. Liberty may not escape summary judgment by making bare and ambiguous allegations and then claiming that issues of material facts exist. *See Neustein v. Orbach*, 732 F.Supp. 333, 346 (E.D.N.Y.1990) (A complaint must contain "more than naked improbable unsubstantiated assertions without any specifics."). Accordingly, defendant's motion for summary judgment with respect to the § 1983 claim and the state constitutional violations is granted.

## III. *CONCLUSION*

For the above-stated reasons, all claims brought under the Fifth Amendment of the United States Constitution, 42 U.S.C. § 1983

and the due process clause of the New York state constitution are hereby dismissed.

SO ORDERED.

---

**9.** Plaintiff never stated which U.C.C. provision defendant purportedly acted under. The *Jefferds* case holds that "peaceable self-help remedies by secured creditors do not involve 'state action' but, rather, constitute private action not governed by the Fourteenth Amendment." *Jefferds*, 522 N.Y.S.2d at 400. Because plaintiff failed to clarify its case, this Court can merely guess which provision is at issue.