Margaret DONG, Plaintiff,

v.

The SMITHSONIAN INSTITUTION,
Defendant.

Civ. A. No. 94–628 (GK).
Motion No. 6–1.

United States District Court,
District of Columbia.

Feb. 28, 1995.

Joseph V. Kaplan, Passman & Kaplan,
P.C., Washington, DC, for plaintiff.

Robert L. Shapiro, U.S. Attorney's Office,
Washington, DC, for defendant.

## MEMORANDUM–OPINION

KESSLER, District Judge.

### I. Introduction and Procedural History

Plaintiff Margaret Dong brings this action under the Privacy Act, 5 U.S.C. § 552a, against her employer, the Smithsonian Institution for damages due to Defendant's alleged breach of its statutory obligations regarding the collection of employment information under 5 U.S.C. Section 552a(e)(2).[1]

Plaintiff filed her Complaint on March 16, 1994. On May 20, 1994, Defendant filed the instant Motion to Dismiss, to which Plaintiff responded on June 13, 1994, and Defendant replied on June 23, 1994. Upon consideration of the Motion, Plaintiff's Opposition, Defendant's Reply, Defendant's "Further Memorandum," Plaintiff's Response to the Defendant's Further Memorandum, oral arguments by counsel at the September 13, 1994 Status Conference, the applicable statutory and case law, and the file in this case in

---

1. This Section requires each agency to "collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal Programs." 5 U.S.C. § 552a(e)(2).

its entirety, the Court concludes that Defendant's Motion to Dismiss shall be denied for the reasons stated below.

## II. Statement of Facts [2]

Plaintiff Margaret Dong is employed as a Museum Registration Specialist by the Hirshhorn Museum and Sculpture Garden, in Washington, D.C., which is a museum within the Defendant Smithsonian Institution. In her Complaint, Plaintiff alleges that two of her supervisors at the Hirshhorn engaged in an investigation in violation of the Privacy Act by failing to first discuss charges of alleged misconduct with her before commencing the investigation and disclosing the nature of the charges against her inside and outside of the Smithsonian. Plaintiff claims damages for, *inter alia*, the emotional trauma she suffered as a result of Defendant's actions, and the harm to her professional reputation that ensued.

The sole issue raised by Defendant's Motion to Dismiss is whether the Smithsonian is an "agency" under the Privacy Act, 5 U.S.C. § 552a, and thus subject to the requirements of the Act. If the Smithsonian does not constitute an agency under the Privacy Act, then this action is properly dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Rule 12(b)(6).

The Court acknowledges that the answer to this challenging question of statutory construction is not entirely clear. However, for all the reasons set out below, the Court concludes that the Smithsonian is covered by the Act, and that Defendant's Motion must, therefore, be denied.

### A. The Relevant Statutory Language

■ The Privacy Act sets out certain requirements for "[e]ach agency that maintains a system of records" and provides for civil remedies against "any agency" in certain circumstances. 5 U.S.C. § 552a(e), (g)(1). According to the Act, "the term 'agency' means agency as defined in section 552(e) of this

title," which is part of the Freedom of Information Act (FOIA). 5 U.S.C. § 552a(a)(1).

Under recent amendments to FOIA, the definition of agency is now contained in FOIA section 552(f) rather than the section referenced in the Privacy Act, 552(e). Section 552(f), in turn, refers to the definition of "agency" in the Administrative Procedure Act, 5 U.S.C. § 551(1), and provides:

> For purposes of this section, the term "agency" as defined in section 551(1) of this title *includes* any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the government (including the Executive Office of the President), or any independent regulatory agency.

5 U.S.C. § 552(f) (emphasis added).

The definition of agency in the Administrative Procedure Act provides that " 'agency' means each authority of the government of the United States, whether or not it is subject to review by another agency." 5 U.S.C. § 551(1). The statute sets out the following exceptions to this general definition of agency: the Congress; the Courts of the United States; the governments of territories or possessions of the United States; the government of the District of Columbia; agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them; courts of martial and military commissions; military authority exercised in the field in time of war or in occupied territory; or functions conferred by certain sections of Title 5 which do not apply here. 5 U.S.C. §§ 551(1)(A)–551(1)(H).

■ Thus, the language of the Act provides that, to be covered by the Privacy Act, the Smithsonian merely has to qualify as an "authority of the United States, whether or not it is subject to review by another agency." The term "authority" is not defined. However, we start our analysis by noting that the definition of agency is an inclusive one. The fact that Congress used the term

---

**2.** For purposes of considering the merits of Defendant's Motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court deems all allegations in the Complaint to be true.

"includes" in Section 552(f) strongly suggests that the definition does not apply only to the entities listed—that is, executive departments, military departments, Government corporations, Government controlled corporations, other establishments in the executive branch of the government, and independent regulatory agencies. Otherwise, had Congress intended to limit the definition to the above-named entities, it could have done so easily by including a limiting word or phrase such as "only" or "limited to". In short, Congress's choice of the term "includes" leads to the conclusion that Congress meant to keep the definition broad enough to cover not only these entities listed, but other national entities as well.

On the other hand, Congress chose to specifically exclude eight different governmental entities from its definition of "agency" in Section 551(1). Significantly, the Smithsonian is not one of the eight entities specifically excluded from coverage of the Act. Therefore, as long as it is not excluded from the Act by virtue of the eight categories listed in Section 551(1), and given the inclusiveness of Section 552(f) as well as the failure of Congress to provide any limiting definition of the term "authority", the Court concludes that the Smithsonian does not have to be an "executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the government . . . or any independent regulatory agency" to qualify as "an authority of the Government of the United States" and thus constitute an agency under the Privacy Act. 5 U.S.C. § 551(1).

Given the imprecision of the statute itself, the Court will also look to the Act's legislative history and to the relevant case law for further guidance.

### B. Legislative History of the Act

The legislative history of the Freedom of Information Act is also less than clear and conclusive on whether the Smithsonian constitutes a FOIA agency. The legislative history that is available, however, does indicate an intent to establish a broad definition encompassing entities which, while not technically a part of the federal government itself, are characterized by substantial governmental involvement and control.

For example, Congress amended FOIA in 1974 in order to broaden the definition of "agency" to encompass more entities "which perform governmental functions and control information of interest to the public." H.R.Rep. No. 876, 93d Cong., 2d Sess. 8 (1974), reprinted in U.S.Code Cong. & Admin.News 1974, 6267, 6274 (hereinafter "House Report"); quoted in Meyer v. Bush, 981 F.2d 1288, 1298 (D.C.Cir.1993) (Wald, J., dissenting); see also H.R.Rep. No. 93–1380, 93rd Cong., 2d Sess., September 25, 1974, reprinted in FOIA Source Book: Legislative History, Texts, and Other Documents, Committee on Government Operations, U.S. House of Representatives 219, 231 (hereinafter "Conference Report") (stating that the conference substitute follows the House bill).

According to the House Report, the definition of "agency" under FOIA (and the Privacy Act) is broader than its definition under the APA. Id. Although the FOIA definition applies to governmental entities as well as government-controlled corporations, it does not apply to "corporations which receive appropriated funds but are neither Chartered by the Federal Government nor controlled by it." Conference Report, supra, at 231–32. This focus on governmental involvement in FOIA's definition of "agency" is designed to further FOIA's purpose to protect "the right of the individual to be able to find out how his [or her] government is operating." H.R.Rep. No. 1497, 89th Cong., 2d Sess. 5 (1966), 1966 U.S.Code Cong. & Admin.News at 2418, 2423.

■ Both of the excerpts from the legislative history cited above suggest that Congress intended that the determination of agency status under FOIA and the Privacy Act depend largely on the nature and extent of an entity's relationship with the federal government, i.e., the greater the governmental involvement and control, the more likely that the entity would be considered a covered agency. Such an analysis is properly applied

in this case.[3]

## C. Precedent

Although courts have ruled on the "agency" status of numerous entities, they have not developed any uniform test for making such a determination. *See, generally,* Richard P. Shafer, *Annotation: The Meaning of the Term "Agency" for Purposes of the Freedom of Information Act,* 57 A.L.R.Fed. 295 (1994). Some courts, however, have enunciated that two factors are relevant to the determination of agency status: (1) whether the entity has "independent decisional authority", and (2) whether the entity is subject to "day-to-day federal control". *Public Citizen Health Research Group v. Department of Health, Education and Welfare,* 668 F.2d 537, 541 (D.C.Cir.1981), citing *Washington Research Project, Inc. v. HEW,* 504 F.2d 238 (D.C.Cir.1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975).

In some cases, the Court of Appeals for the D.C. Circuit has focused primarily on the first of the two factors above, and engaged in a "functional analysis". For example, in *Soucie v. David,* the court conceded that the APA's statutory definition of "agency" is not "entirely clear," but concluded that the APA "apparently confers agency status on any administrative unit with substantial independent authority in the exercise of specific functions." 448 F.2d 1067, 1073 (D.C.Cir. 1971); *see also Meyer v. Bush,* 981 F.2d 1288, 1292 (D.C.Cir.1993).

In a different case more factually similar to this one, the D.C. Circuit emphasized the second of the two factors, and consequently found the Federal Home Loan Mortgage Corporation ("the Corporation"), to be an "agency" subject to the Privacy Act. *Rocap v. Indiek,* 539 F.2d 174, 176–77 (D.C.Cir. 1976). In holding that FOIA's definition of agency applied to "hybrid governmental/private entities", the *Rocap* Court found it compelling that, not only did the Corporation have a Federal Charter, but also was subject to "substantial federal control over its day-to-day operations." *Id.* at 177. In the situation of a hybrid governmental/private entity, the court concluded, the proper inquiry to be made in determining if an entity constitutes an agency under FOIA and the Privacy Act is the amount of federal control.[4] In making this determination, the *Rocap* Court engaged in the following analysis:

The organizational structure of the Corporation exhibits many characteristics similar to those of other governmental entities subject to the Freedom of Information Act. It is federally chartered, its Board of Directors is Presidentially appointed, it is subject to close governmental supervision and control over its business transactions, and to federal control over its business transactions, and to federal audit and reporting requirements. In addition, the Corporation is expressly designated as an "agency," and its employees are officers and employees of the United States, for a number of purposes. Like other agencies, it is empowered "to make and enforce such bylaws, rules, and regulations as may be necessary or appropriate to carry out the purposes of [its enabling act.]" (citation omitted).

*Rocap v. Indiek,* 539 F.2d at 176.

Under *Rocap* and its progeny, it is unnecessary to determine whether the Smithsonian is a government controlled corporation, a government corporation, or some other kind of establishment in the executive branch of the government because "regardless of its label," it is the "threshold showing of substantial federal control or supervision" that "is required before an entity can be characterized as 'federal' ". *Irwin Memorial v.*

---

**3.** The legislative history also indicates that the definition of "agency" does not apply to entities "whose sole function is to advise and assist the President." H.R.Rep. No. 1380, 93rd Cong., 2d Sess. 14 (1974), quoted in *Meyer, supra,* 981 F.2d at 1298. Since neither side contends that the Smithsonian's sole function is to advise and assist the President, this statutory exclusion is not relevant to this case.

**4.** *See* Transcript of Motions Hearing Before the Honorable Charles R. Richey, United States District Judge, District of Columbia, *Cotton v. Adams,* CA. No. 91–2827 (CRR) (March 18, 1992) (filed April 2, 1992) (engaging in such an inquiry).

*American National Red Cross,* 640 F.2d 1051, 1054–55 (9th Cir.1981).

Applying these standards on a case-by-case basis, the Court of Appeals for our Circuit has concluded that FOIA's definition of "agency" applies to a broad range of entities. For example, the court concluded that the Office of Science and Technology,[5] the Defense Nuclear Facilities Safety Board,[6] the Council on Environmental Quality,[7] the Office of Personnel Management,[8] and even the Federal Home Loan Mortgage Corporation[9] all constitute FOIA agencies. Conversely, for reasons that do not apply here, the court determined that the Council of Economic Advisors[10] the National Capital Medical Foundation, Inc. (serving as a Professional Standards Review Organization),[11] and the Task Force on Regulatory Relief[12] are not FOIA agencies.

Ultimately the Court of Appeals for our Circuit has concluded that, with the " 'myriad organizational arrangements for getting the business of the government done' ", " 'any general definition [of the term agency] can be of only limited utility' " and, consequently, " 'the unavoidable fact is that each new arrangement must be examined anew and in its own context.' " *Public Citizen Health, supra,* 668 F.2d at 542 (quoting *Washington Research Project,* 504 F.2d at 245–46).

Applying the criteria discussed above to the case at bar, the Court concludes that the Smithsonian qualifies as a FOIA agency when "examined anew and in its own context." *Id.*

### D. Federal Agency Characteristics of the Smithsonian

As outlined by the Plaintiff in its Opposition to Defendant's Motion to Dismiss, as well as by the courts in *Cotton v. Adams,* 798 F.Supp. 22, 24 (D.D.C.1992), *appeal pending,* and *Expeditions Unlimited Aquatic Enterprises v. Smithsonian Institution,* 566 F.2d 289, 296 (D.C.Cir.1977), the Smithsonian has sufficient federal ties and control, as well as independent authority, to compel a finding of agency status under the Act. Specifically, the following federal characteristics of the Smithsonian establish it to be an agency within the definition of FOIA and the Privacy Act.

The ties between the Smithsonian and the federal government are numerous. For example, the Smithsonian is chartered by an Act of Congress.[13] 20 U.S.C. § 41. It also has a majority of federal civil service employees. *Expeditions Unlimited, supra,* at 296; *Cotton v. Adams, supra,* at 24. It receives representation from the United States Attorney. *Id.* It enjoys absolute governmental immunity in libel suits. *Id.* It receives a vast amount of federal funding which it then disburses to its various programs. *Id.* It is subject to GAO audit and reporting requirements and complies with the GAO's accounting standards. *Id.* It enjoys federal status in taxes and property transfers. *Id.* It pub-

---

**5.** *Soucie v. David,* 448 F.2d 1067 (D.C.Cir.1971).

**6.** *Energy Research Foundation v. Defense Nuclear Facilities Safety Board,* 917 F.2d 581 (D.C.Cir. 1990).

**7.** *Pacific Legal Foundation v. Council on Environmental Quality,* 636 F.2d 1259 (D.C.Cir.1980).

**8.** *Dickson v. Office of Personnel Management.* 828 F.2d 32 (D.C.Cir.1987).

**9.** *Rocap v. Indiek,* 539 F.2d 174, 176–77 (D.C.Cir. 1976).

**10.** *Rushforth v. Council of Economic Advisers,* 762 F.2d 1038, 1043 (D.C.Cir.1985) (holding that the Council of Economic Advisers' sole function was that of "advising and assisting the Presi-

dent," and consequently the Council was not an agency for purposes of FOIA).

**11.** *Public Citizen Health Research Group v. Department of Health, Education and Welfare,* 668 F.2d 537 (D.C.Cir.1981), (excluding the National Capital Medical Research Group from coverage under the Act on the grounds that, *inter alia,* it was organized under the laws of the District of Columbia rather than federal law, it was controlled by a Board of Trustees all of which were private individuals, and its employees were not government employees).

**12.** *Meyer v. Bush,* 981 F.2d 1288 (D.C.Cir.1993) (exempting the Task Force because its sole function was to "advise and assist" the President).

**13.** The Court recognizes, of course, that the Smithsonian was created at a time when all corporations were Congressionally chartered.

lishes rules and regulations, such as its police regulations, in the CFR and the Federal Register. *Id.; see also Cotton v. Adams,* March 18, 1992 Hearing, *supra.*

Further, the Board of Directors are either themselves federal officials or else are selected by federal officials. The President of the Senate selects the three members who are Senators; the Speaker of the House selects the three members who are Representatives; and Congress selects the other nine members of the Board of Directors by joint resolution. 20 U.S.C. §§ 43 (Regents of the Smithsonian). Similarly, federal officials appoint or serve themselves as the individuals authorized to direct the business of the Smithsonian member museums. 76cc(b) (Board of Trustees of the Hirshhorn Museum); 76h(b) (Board of Trustees of the Center for the Performing Arts); 80(b) (nine members of the National Armed Forces Museum Advisory Board).

The financial ties between the Smithsonian and the federal government are also noteworthy. The Secretary of the Smithsonian must "submit to Congress ... a detailed statement of the expenditures of the preceding fiscal year." 20 U.S.C. § 49. The Treasury Department keeps "[a]ll moneys recovered by or accruing to [the Smithsonian]". 20 U.S.C. § 53. Seventy-five percent of all of the Smithsonian's operating and maintenance costs are derived from federal funds. *Expeditions Unlimited, supra,* 566 F.2d at 296 n. 4. Significantly, on certain employment forms, the Smithsonian holds itself out to its employees as subject to the Privacy Act. *See, e.g.,* Standard Form 1164, Attached to Plaintiff's Opposition to Defendant's Motion to Dismiss. In all of these ways, the structure of the Smithsonian Institution reveals its status as an authority of the federal government properly subject to FOIA and the Privacy Act.

Additionally, the Smithsonian possesses independent decisionmaking authority. For example, it possesses police powers to enforce regulations concerning its grounds, to designate special police, and to punish violators of the regulations. 40 U.S.C. §§ 193n, 193r, 193s. By having its own rule-making power, as well as authority to enforce those rules by imposing sanctions (e.g. fines) on violators, the Smithsonian has the power to, and in fact does, make binding decisions. Furthermore, the Smithsonian possesses the power to make binding decisions regarding how to spend its substantial budget derived from the large amounts of federal funds appropriated to it by Congress. To assist the Smithsonian in carrying out its mission, Congress authorized the Smithsonian to enter into contracts. *See, e.g.,* 20 U.S.C. §§ 51–53, 54–57, 67.

Congress also granted the Smithsonian's Board of Regents or executive committee of that Board the discretion over the disbursement of Congressional appropriations. 20 U.S.C. § 57. For example, Congress appropriated funds for the Hirshhorn Museum and Sculpture Garden to be spent "as may be necessary for the maintenance and operation of such museum and sculpture garden." 20 U.S.C. § 76ee. Similar provisions demonstrating the Smithsonian's discretion regarding appropriations can be found in the subchapters defining the National Portrait Gallery (20 U.S.C. § 75g); JFK Center for the Performing Arts (20 U.S.C. § 76n(c)); Smithsonian Gallery of Art (20 U.S.C. § 76g); Canal Zone Biological Area (20 U.S.C. § 79b(d)); National Armed Forces Museum Advisory Board (20 U.S.C. § 80d), and most of the other museums and centers within the Smithsonian Institution.

Furthermore, each individual museum's directors possess the authority to buy and sell appropriate art work or historical materials. For example, Congress granted the Board of Trustees of the Hirshhorn Museum "sole authority (i) to purchase works of art for the Joseph H. Hirshhorn Museum and Sculpture Garden, [and] (ii) to loan, exchange, sell or otherwise dispose of said works of art". 20 U.S.C. § 76cc. The Smithsonian also has authority, pursuant to Title 5 of the United States Code, to make binding decisions with regard to its employees—for example, to make binding decisions with regard to hiring, discipline, promotions, details, reassignments and performance appraisals. 5 U.S.C. ch. 75. In these ways, as well as others, the Smithsonian possesses the independent authority to

evaluate and coordinate, as well as implement, its own programs.

Significantly, courts have found the Smithsonian to be an agency for numerous other purposes.[14] For example, the U.S. Court of Appeals for the D.C. Circuit, *en banc*, upheld a panel decision holding that the Smithsonian was a federal agency under the Federal Tort Claims Act and thereby was entitled to absolute governmental immunity from a suit for libel. *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 566 F.2d 289 (D.C.Cir.1977), *cert. denied,* 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978). *See also Magruder v. Smithsonian Institution,* 758 F.2d 591, 593 (11th Cir.1985) (treating the Smithsonian Institution as the United States in holding that the Plaintiff's tort claim was time-barred).

The Smithsonian was also found to be an executive agency pursuant to Section 105 of Title 5, and therefore immune from suit under the exemptions which were then applicable to executive agencies under the Age Discrimination in Employment Act. *Benima v. Smithsonian Institution,* 471 F.Supp. 62 (D.Mass.1979). Additionally, the EEOC has determined that the Smithsonian—including both its federally funded and privately funded parts—was an executive branch agency, like the Postal Service and Postal Rate Commission, within the meaning of Section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16. Decision No. 89–3, FEP Cases 1889, 1896 (June 27, 1989). For Title VII purposes, the Smithsonian has enjoyed a 30–day statute of limitations for equal opportunity complaints against federal employers as opposed to the 90–day statute of limitations for complaints against private employers. 42 U.S.C. §§ 2000e–16(c), 2000e–5(f)(1).

Perhaps most importantly, the Smithsonian "performs governmental functions as a center of scholarship and a national museum responsible for the safekeeping and maintenance of national treasures." *Cotton v. Adams, supra,* at 24. Clearly, the Smithsonian, as the country's national museum, "con-

trol[s] information of interest to the public." House Report, *supra,* at 6274.

While none of these facts about the operation and legal status of the Smithsonian would, by themselves, endow it with agency status, they do, taken together, lead to the conclusion that the Smithsonian enjoys sufficient federal involvement and independent decisionmaking authority to merit agency status under FOIA when examined "'in its own context.'" *Public Citizen Health, supra,* 668 F.2d at 542 (quoting *Washington Research Project,* 504 F.2d at 245–46). When the Court examines the Congressional purposes of the Privacy Act and the FOIA, along with the myriad connections between the Smithsonian and the federal government, it simply blinks reality to conclude that the Smithsonian is not a federal agency.

*III. Conclusion*

For all of the reasons stated above, this Court finds that Defendant the Smithsonian Institution constitutes an agency subject to the Privacy Act, 5 U.S.C. § 552a. Accordingly, this Court has subject matter jurisdiction over this action, and Defendant's Motion to Dismiss must be **denied.**

---

14. The Court recognizes that the definition of "agency" differs somewhat among statutes. Nevertheless, a finding of agency status in other contexts still constitutes information helpful to the Court in determining agency status under the FOIA.