ALLNET COMMUNICATION
SERVICES, INC.,
Plaintiff,

v.

FEDERAL COMMUNICATIONS
COMMISSION, Defendant.

Civ. A. No. 92–1350 (CRR).

United States District Court,
District of Columbia.

Aug. 31, 1992.

William R. Malone of Miller & Holbrooke and Roy L. Morris, Deputy Gen. Counsel of Allnet Communications Services, Inc. of Washington, D.C., for plaintiff.

Jay B. Stephens, U.S. Atty., D.D.C., John D. Bates, Mark E. Nagle, Asst. U.S. Attys., D.D.C., and Jane E. Mago of the Office of Gen. Counsel, F.C.C., Washington, D.C., for defendant.

Francine J. Berry, David P. Condit, Basking Ridge, N.J., G. Ridgley Loux, and Nathaniel R. Friends of American Telephone and Telegraph Company, Washington, D.C., for intervenor defendant, American Telephone & Telegraph Co.

Lawrence E. Sarjeant, Robert B. McKenna and Anna Lim, Washington, D.C., for intervenor defendant, U.S. West Communications, Inc. (USWC).

Albert Halprin, Stephen L. Goodman, Martin Mendelsohn of Halprin, Mendelsohn & Goodman, Washington, D.C. and J. Paul DeJongh of Northern Telecom Inc., Research Triangle Park, N.C., for intervenor defendant, Northern Telecom, Inc.

Alfred W. Whittaker, Stuart A.C. Drake and Rick Richmond of Kirkland & Ellis, Washington, D.C., for intervenor defendant, Bellcore and Participating Bell Operating Companies (BOC).

MEMORANDUM OPINION OF CHARLES R. RICHEY UNITED STATES DISTRICT JUDGE

CHARLES R. RICHEY, District Judge.

The plaintiff filed the above-captioned case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of various information submitted to the Federal Communications Commission ("FCC", "Commission") by various telecommunications companies as part of cost justification for proposed "Open Network Architecture" (ONA) service rates. Before the Court are the defendant's Motion for Summary Judgment, the plaintiff's Motion for Partial Summary Judgment, and Motions for Summary Judgment filed by Defendant–Intervenors Bell Communications Research, Inc. ("Bellcore") and participating Bell Operating Companies [1] ("BOCs"), U.S. West Communications, Inc. ("U.S. West"), American Telephone and Telegraph Company ("AT & T"),[2] and Northern Telecom, Inc. The Court heard oral arguments

---

1. The participating Bell Operating Companies include: The Bell Telephone Company of Pennsylvania; The Chesapeake and Potomac Telephone Company, The Chesapeake and Potomac Telephone Company of Maryland, The Chesapeake and Potomac Telephone Company of Virginia, The Chesapeake and Potomac Telephone Company of West Virginia, The Diamond State Telephone Company, New Jersey Bell Telephone Company, Pacific Bell, Nevada Bell, Southwestern Bell Telephone Company, BellSouth Telecommunications, Inc., New York Telephone Company, New England Telephone and Telegraph Company, Indiana Bell Telephone Company, Inc., Michigan Bell Telephone Company, The Ohio Bell Telephone Company, Wisconsin Bell, Inc., and Illinois Bell Telephone Company.

2. AT & T's motion is styled as a Motion to Dismiss, or, in the Alternative, for Summary Judgment.

on the pending motions on August 19, 1992, after which supplemental memoranda were filed.

Upon careful consideration of all of the pending motions, the supporting and opposing memoranda, the arguments of counsel, the applicable law, and the entire record herein, the Court concludes that the dispositive motions of the defendant and defendant-intervenors must be granted, and the motion of the plaintiff must be denied. Despite the tenacious arguments of plaintiff to the contrary, the Court fails to see any genuine disputes as to any material facts which can preclude the entry of summary judgment in this case.

## I. Background

The Switching Cost Information System ("SCIS") is a computer model developed and maintained by Bell Communications Research ("Bellcore"). SCIS allows a user to estimate future costs of providing specific types of telecommunications services within a call routing network based on proprietary cost and engineering data provided by the switch vendors. Bellcore Mot. for Summary Judgment, Decl. of James F. Britt ("Britt decl.") ¶¶ 2–3. For the purposes of this litigation, the term "SCIS" also encompasses analogous computer models developed by other companies, notably by defendant-intervenor U.S. West.[3] These models are licensed to the Bell Operating Companies ("BOCs") and other companies, pursuant to nondisclosure conditions.

The SCIS is used in conjunction with the FCC's Open Network Architecture ("ONA") policies, which require the BOCs to "unbundle" their basic regulated telecommunications services. Def.Mot. for Summary Judgment, Decl. of Mary Brown ("Brown decl."), ¶ 2. This procedure is designed to promote efficient use of the telephone network by providers of unregulated "enhanced services" and to prevent BOCs from discriminating against independent enhanced service providers. Id. Under the ONA, BOCs must provide customers with optional unbundled features called Ba-

sic Service Elements ("BSEs"). When BOCs file tariffs containing new services, they must identify the direct costs of the new service, overhead, and ratio of unit cost to unit investment and unit price. Brown decl. ¶ 3. Unbundled BSE's reside within electronic switches that also perform other functions. Therefore, rate development for the BSEs requires an allocation of joint and common switching costs and capacity with great specificity which requires the use of computer models such as SCIS. Id.

The computer models and accompanying materials that are at issue in this case were filed with the FCC to allow review of the BOCs' tariffs implementing the ONA program. Brown decl. ¶ 1. By order of September 19, 1992, the Common Carrier Bureau ("Bureau") of the FCC required the BOCs to file with the FCC any computer models and associated data that were used to develop the ONA service rates in the first ONA tariffs. Brown decl. ¶ 4. The FCC stated, however, that it would consider waiving the public filing requirement. The BOCs petitioned for waiver, arguing that public release of this information would harm the competitive proprietary interest of Bellcore and U.S. West in their computer models. Id. Telecommunications switching equipment vendors also requested waivers, claiming that release of the information would cause them competitive harm because the costing models depended upon the confidential specifications that they had supplied to Bellcore and U.S. West under non-disclosure agreements. Id. After an in camera inspection, the Commission determined that the information would be exempted from mandatory disclosure under FOIA Exemption 4, and commenced proceedings to develop a mechanism for discretionary disclosure. Brown decl. ¶ 5.

Pursuant to the ONA proceeding, the FCC ordered Bellcore to provide access to a redacted version of the SCIS program and documentation on a confidential basis. Plaintiff Allnet, a long distance telephone carrier and participant in the ONA proceed-

---

**3.** U.S. West's software system is known as the Switching Cost Model ("SCM").

ing received access to the redacted version. Unsatisfied, plaintiff filed its FOIA request on January 6, 1992, requesting "copies and/or inspection of all of the Bell Operating Companies (BOCs) [sic] Switching Cost Information System (SCIS) models and all associated data which has been filed with the Commission, but not made publicly available." Complaint, Ex. A. The Bureau denied this request by letter dated February 7, 1992. Complaint, Ex. B. Allnet requested administrative review of the denial on March 9, 1992. When the agency did not act upon the request in a timely fashion, Allnet filed this action on June 9, 1992.[4]

In the instant action, plaintiff initially sought an order directing defendant FCC to produce the SCIS models of the Bell Operating Companies, and all associated data. The withheld information sought in the complaint encompassed (1) SCIS computer models (including U.S. West's SCM) and instructional materials; (2) SCIS input data containing specific cost and technical information regarding the switching equipment used to provide ONA services, and (3) SCIS output reports and data assigning the investment costs of switch subcomponents to specific ONA services. Brown decl. ¶ 8. The plaintiff, in its subsequent pleadings and at oral argument, has modified the request by withdrawing its request for input data which accompanies the SCIS software, and the actual software itself as described in the *Vaughn* index, Part I, Subpart A (Def.Mot. for Summary Judgment, Ex. C). The other information remains at issue, including the output data and reports and extensive descriptive and instructional material which accompanies the software.

Defendant and defendant-intervenors argue that the information sought by plaintiff is exempt from disclosure under FOIA exemption 4, 5 U.S.C. § 552(b)(4). They offer various theories to support this contention. The plaintiff counters that even if it is not entitled to summary judgment, neither is defendant because there are dis-

putes as to material facts and plaintiff is entitled to further discovery under Fed. R.Civ.P. 56(f).

## II. Analysis

### (A) *The Standard of Review*

Rule 56(c) of the Federal Rules of Civil Procedure requires that the Court grant a motion for summary judgment if the pleadings and supporting affidavits and other submissions "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). It is well established that the Court must believe the non-movant's evidence and draw all justifiable inferences in its favor. *Id.* at 255, 106 S.Ct. at 2513. However, the nonmoving party may not rest upon "mere allegations or denials," but rather must set forth specific facts, by affidavit or otherwise, showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

Under Exemption 4 of the FOIA, an agency may withhold information consisting of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Thus the exemption covers two broad categories of information: (1) trade secrets; and (2) information which is (a) commercial or financial, and (b) obtained from a person; and (c) privileged or confidential. While there is substantial overlap in the pleadings, the defendant and defendant-intervenors AT & T and Northern Telecom rely primarily on the confidential commercial information aspect of Exemption 4; defendant-intervenor U.S. West focuses primarily on the trade secret aspect of Exemption 4; and defendant-inter-

---

**4.** An agency's failure to act on an administrative FOIA appeal within the twenty days prescribed in 5 U.S.C. § 552(a)(6)(A)(ii) constitutes a constructive denial and administrative remedies are deemed to be exhausted. 5 U.S.C. § 552(a)(6)(B); *see, e.g., Cazalas v. U.S. Dep't of Justice,* 660 F.2d 612 (5th Cir.1981).

venor Bellcore relies on both of these rationales for exempting the materials from disclosure.

(B) *The Material Sought Was Properly Withheld Under Exemption 4 of the FOIA Because It Is Confidential Commercial Information*

▇ Exemption 4 protects (1) commercial or financial information; (2) obtained from a person; that is (3) privileged or confidential. *See, e.g., Gulf & Western Indus. v. U.S.*, 615 F.2d 527, 529 (D.C.Cir.1979). The information plaintiff seeks here satisfies these three requirements.

The terms "commercial" and "financial" should be given their ordinary meanings under Exemption 4. *Public Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C.Cir.1983). The contested information in this case is clearly commercial, and this issue is not disputed.

▇ The information was obtained "from a person" within the meaning of Exemption 4 because "person" refers to a wide range of entities including corporations, associations and public or private organizations other than agencies. *Critical Mass Energy Project v. NRC*, 830 F.2d 278, 281 n. 15 (D.C.Cir.1987) ("Critical Mass I"). Here, the information sought was provided to the FCC from various corporations and commercial entities. The plaintiff does not dispute this issue.

▇ The critical question in this case is whether the materials sought are confidential or privileged. In *National Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C.Cir.1974), the D.C. Circuit held that this criterion is satisfied if either (1) disclosure of the information sought is likely to impair the government's ability to obtain necessary information in the future; or (2) disclosure is likely to cause substantial harm to the competitive position of the person from whom the information was obtained. The Court of Appeals recently reaffirmed this test, but confined it to those cases involving information that persons were required to provide to the government. *Critical Mass Energy Project v. NRC*, 975 F.2d 871 (D.C.Cir.

1992). For cases involving information that was voluntarily supplied to the government, the Court of Appeals has adopted a new test. Financial or commercial information provided to the government on a voluntary basis is exempt under Exemption 4 "if it is of a kind that the provider would not customarily release to the public." *Id.* at 879–880.

(1) *The Information that the Suppliers Were Required to Submit to the Commission Was Properly Withheld Because Disclosure Is Likely to Substantially Harm the Competitive Position of the Suppliers*

To satisfy the competitive harm test set forth in *National Parks*, evidence of "actual competition and a likelihood of substantial competitive injury" is necessary. *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1152 (D.C.Cir.1987). Here the intervenors and defendant have gone to great lengths and provided affidavits to demonstrate the vitality of the information and the extreme importance of it to their competitive interests. For example, Bellcore has shown that it has spent more than $22 million developing the SCIS system, and that it receives approximately $4.8 million in revenue from licensing the system to BOCs. Bellcore Mot. for Summary Judgment, Decl. of Decl. of James F. Britt ("First Britt decl."), ¶¶ 5–6. Moreover, vendors only willingly submit the proprietary information necessary for the SCIS systems to work, subject to non-disclosure agreements. *Id.* ¶ 16. Both the market for SCIS computer models, and the switch vendor markets are competitive. *Id.*

▇ Plaintiff, however, contends that defendant has not shown that disclosure would cause competitive harm. In particular, plaintiff contends that certain material has already been released to the public; therefore, plaintiff reasons, the information must not be confidential. Moreover, plaintiff argues that in light of the fact that redacted versions of some of the information was made available to participants in the ONA proceedings, there is segregable information which should have been released under FOIA. The plaintiff further

contends that there remain factual disputes concerning these issues which preclude summary judgment.

Upon careful consideration, the Court finds plaintiff's arguments without merit. To support its allegations, the plaintiff has offered a speculative and generalized affidavit from its trial counsel, which is based largely on his unsubstantiated opinions.[5] However, "a requester's opinion disputing the risk created by disclosure is not sufficient to preclude summary judgment for the agency, when the agency possessing the relevant expertise has provided sufficiently detailed affidavits." *Struth v. FBI*, 673 F.Supp. 949, 954 (E.D.Wi.1987); *see also Gardels v. C.I.A.*, 689 F.2d 1100, 1106, n. 5 (D.C.Cir.1982). As has been amply demonstrated in the supplemental pleadings and counter affidavits filed by defendant and defendant-intervenors, the "evidence" offered by the plaintiff fails to create a genuine dispute of material fact as required under Rule 56 of the Federal Rules of Civil Procedure.

For example, in an attempt to show that there is a dispute as to whether disclosure of the information risks competitive harm to Bellcore and others, plaintiff notes that Bellcore receives $7 million in revenue annually from the SCIS sales, a figure that plaintiff's counsel dismisses as "de minimus" in comparison to Bellcore's total annual revenue. Pl.Mot. for Partial Summary Judgment, Decl. of Roy L. Morris ("Morris decl.") ¶ 22. This issue is not material, because even if the plaintiff has cited the correct figure, this figure would constitute a "substantial" competitive harm. *National Parks* at 770. Plaintiff also contends that there has been prior, unrestricted disclosure of SCIS and SCM information in other proceedings and in promotional presentations. Morris decl. ¶¶ 16, 28, 31. However, this information does not constitute competent evidence; it is nonspecific and lacks precise information regarding dates and times of these alleged events. Moreover, the defendant-intervenor Bellcore has provided specific, affirmative evidence that no unrestricted disclosure has occurred which demonstrates that the vague hearsay offered by plaintiff cannot raise a genuine issue as to a material fact. *See, e.g.*, Bellcore's Reply Brief, Second Decl. of James F. Britt ("Second Britt decl.") ¶ 14; Supplemental Statement of Bellcore, Exs. A–H; Brown decl. ¶¶ 5, 21.

■ The plaintiff also infers that the defendant's *Vaughn* index is inadequate because a redacted copy of much of the information sought was provided to participants in the ONA hearings. *See* Morris decl. ¶ 17. The plaintiff infers that this indicates that much of the information sought is segregable and therefore should be released. *See* 5 U.S.C. § 552(b). This argument also lacks merit. As noted at the hearing, this redacted version was only made available pursuant to strict confidentiality agreements. It was not publicly released. *See* Second Affidavit of Lee M. Nye, ¶ 2. Therefore, there has been no sort of "waiver" of the confidentiality of any of the information at issue herein, and there is no factual basis to infer that there is segregable, non-confidential material available, the release of which would not subject the defendant and defendant-intervenors to competitive harm.

The plaintiff makes a further argument related to the segregability issue, which merits brief discussion. Plaintiff contends that since it has withdrawn its request for the input data and the computer software itself, confidential information is no longer at issue. However, this opinion cannot withstand scrutiny. Both defendant-intervenor U.S. West and defendant-intervenor Bellcore have submitted affidavits or declarations to demonstrate that even without the actual software and input data, the information sought will compromise the confidentiality of their proprietary information. *See* U.S. West Reply Brief, Supplemental Aff. of Barbara H. Stock, at 1–3; Second Britt decl. ¶ 10.

---

5. One striking example is the statement in the affidavit that "SCIS and SCM software are simply overpriced spreadsheets". Pl.Mot. for Partial Summary Judgment, Decl. of Roy L. Morris ("Morris decl.") ¶ 27.

Thus the Court concludes that the defendant and defendant-intervenors have successfully demonstrated that they are entitled to withhold the documents sought because it is confidential commercial information within the meaning of FOIA Exemption 4. While the plaintiff has valiantly attempted to raise a genuine dispute as to a material fact, it has failed to provide competent evidence that satisfies the requirements of Fed.R.Civ.P. 56.

(2) *The Information that Was Voluntarily Provided Was Properly Withheld Because the Providers Would Not Customarily Release It to the Public*

■ The government has demonstrated that the input information provided by switch vendors for use with the SCIS program is provided voluntarily by the switch vendors. Brown decl. ¶ 22. While the plaintiff no longer seeks the input data itself, this information is essential to the outputs that are created. Therefore, at least some of the information sought can be considered "voluntarily" submitted.

■ To the extent that the information sought was submitted voluntarily, the material was properly withheld, because, as previously set forth in section II(B)(1), *supra,* it has been amply demonstrated that the switch vendors would not customarily release the information to the public. *See generally* First and Second Britt decls.

(3) *In Addition, the Material Sought Was Properly Withheld Under Exemption 4 of the FOIA Because Its Disclosure Would Undermine the Effectiveness of the Government's ONA Program.*

As an additional argument to support the invocation of FOIA Exemption 4, defendant argues that disclosure of the information sought would impair the effectiveness of its ONA program. Exemption 4 may be invoked where disclosure of the information would impair the effectiveness of a government program. *See 9 to 5 Org. for Women Office Workers v. Board of Governors of the Fed. Reserve Sys,* 721 F.2d 1, 10 (1st Cir.1983); *National Parks* at 770,

n. 17. The defendant has shown that the implementation of ONA is a "significant" FCC priority, and is part of the Commission's efforts to prevent unreasonable and discriminatory service rates. Brown decl. ¶ 21. The SCIS models have been critical to the review of these rates. *Id.* Switch vendors have indicated that if the information they provide were subject to release under the FOIA, they would be reluctant to supply the proprietary input data which is necessary for the functioning of the computer models. *Id.* Without the voluntary, confidential flow of information between switch vendors and Bellcore, the ability of the FCC to administer the ONA program would be impaired. It is doubtful that the FCC would have the authority to compel the production of the information that the switch vendors currently provide voluntarily. Brown decl. ¶ 22. Therefore, should the plaintiff's FOIA request be granted, the switch vendors could decline to provide the information necessary to the effective use of the SCIS. The effectiveness of the ONA program as a whole would thereby be reduced. *Id.*

The plaintiff has offered no competent evidence to contest this argument. Therefore, the danger of impeding the effectiveness of the ONA program provides an additional reason for proper withholding of the information sought under Exemption 4 of the FOIA.

### III. Conclusion

Accordingly, for all of the reasons previously stated herein, the Court concludes that the plaintiff's FOIA request was properly denied. Therefore the dispositive motions filed by the defendant and defendant-intervenors shall be granted, and plaintiff's motion for partial summary judgment shall be denied.[6]

---

**6.** Because the Court has found Exemption 4 properly invoked under the confidential com-

---

mercial information rationale, it declines to reach the issue of whether the material sought constitutes a trade secret. To the extent that defendant-intervenor U.S. West requested that the information be withheld *solely* on the basis of the trade secret issue, its motion is denied.