John GILMORE, Plaintiff,

v.

U.S. DEPARTMENT OF ENERGY, Defendant.

No. C–95–0285 WHO.

United States District Court, N.D. California.

March 13, 1998.

Lee Tien, Berkeley, CA, for Plaintiff.

Michael Yamaguchi, U.S. Atty., Mary Beth
Uitti, Asst. U.S. Atty., San Francisco, CA,
Elizabeth A. Pugh, Daphene R. McFerren,
U.S. Dept. of Justice, Washington, DC, for
Defendant.

## OPINION AND ORDER

ORRICK, District Judge.

In this action brought by John Gilmore
("Gilmore") against the United States De-
partment of Energy ("DOE") under the
Freedom of Information Act ("FOIA"), 5
U.S.C. § 552, both parties now move for
summary judgment. For the reasons set
forth below, DOE's motion for summary
judgment is granted in part, and denied in
part. Gilmore's motion for summary judg-
ment is denied in its entirety.

### I.

On December 8, 1993, Gilmore filed a
FOIA request with DOE, seeking access to
all agency records pertaining to the CLER-
VER conferencing technology. CLERVER
was created by Sandia National Laborato-
ries/New Mexico ("SNL"), is owned by San-
dia Corporation ("Sandia"), and has been li-
censed to several private parties, including
SunSolutions, Inc. ("Sun"). CLERVER is

video conferencing software that allows people in different geographical locations to simultaneously collaborate on complex technical drawings and schematics using their desktop computers. Gilmore requested a copy of CLERVER, as well as all documentation relating to CLERVER, including the source code. He also requested all records that pertain to the rationale for making CLERVER available to Sun, but not to the general public. Gilmore intends to disseminate all of these records on the Internet.

By letter dated May 2, 1994, DOE denied Gilmore's request in its entirety on the ground that (1) the software was not an agency record; (2) the other information about the software was not in DOE's possession; and (3) the information was exempt from disclosure because it was commercially valuable. On May 27, 1994, Gilmore appealed DOE's denial of his request. On June 29, 1994, DOE denied his appeal.

This action was filed on January 24, 1995, and an amended complaint was filed on March 2, 1995. Gilmore seeks:

1. disclosure of CLERVER and related documents;

2. to enjoin DOE from denying FOIA requests for computer software on the ground that software is not an agency record;

3. a declaration that DOE's failure to publicly define the terms "contractor" or "contractor records" renders its "contractor records" regulations null and void as applied to Gilmore and any other person without actual notice of their terms, and requiring DOE to publish definitions of these terms in the Federal Register;

4. a declaration that federal laboratories such as SNL are agencies of DOE subject to the FOIA, and that records of federal laboratories produced under their management and operations contracts with DOE are agency records subject to the FOIA that cannot be withheld under FOIA Exemption 4;

5. a declaration that DOE's pattern and practice of failing to issue a determination of FOIA requests within the ten-day statutory period is unlawful;

6. a declaration that DOE's failure to provide adequate information during the administrative process about the withholding of records is unlawful; and

7. an award of costs and fees.

Gilmore brings these claims under the FOIA, the Administrative Procedures Act, and the Fifth Amendment of the United States Constitution. The parties have now filed cross-motions for summary judgment.

## II.

### A.

█ "The basic purpose of the [FOIA] is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) (citations omitted). The FOIA was intended to establish a general philosophy of full agency disclosure and to close the loopholes that allowed agencies to deny legitimate information to the public. *GTE Sylvania, Inc. v. Consumers Union of the United States*, 445 U.S. 375, 385, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980). In accordance with those goals, the FOIA provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3). Nine specific categories of records are not required to be disclosed. 5 U.S.C. § 552(b). "But unless the requested material falls within one of these nine statutory exemptions, the FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public." *Robbins Tire*, 437 U.S. at 221, 98 S.Ct. 2311. The only exemption claimed to be relevant here is Exemption 4, the exemption for "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. 552(b)(4).

█ The FOIA vests jurisdiction in federal district courts to enjoin an agency from

withholding agency records and to order the production of any agency records improperly withheld from the complainant. 5 U.S.C. § 552(a)(4)(B). Federal jurisdiction is thus dependent upon a showing that an agency has (1) improperly (2) withheld (3) agency records. *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 150, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980). The threshold question in this case is whether the requested documents relating to CLERVER are agency records within the meaning of the FOIA.

■ Under the FOIA, the term "agency" includes "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f). Private organizations receiving federal financial assistance grants are not within the FOIA definition of "agency," absent extensive, detailed, and virtually day-to-day supervision. *Forsham v. Harris,* 445 U.S. 169, 179, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980).

"Records" include "all books, papers, maps, photographs, machine readable materials, or other documentary materials, regardless of physical form or characteristics made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business." *Id.* at 183, 100 S.Ct. 977 (applying the definition of a "record" from the Records Disposal Act, 44 U.S.C. § 3301, to the FOIA).

■ Two requirements must be satisfied for materials to qualify as "agency records." *United States Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 144, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989) (*"Tax Analysts I"*). First, an agency must either create or obtain the materials. *Id.* Second, the agency must be in control of the requested materials at the time the FOIA request is made. *Id.* at 145, 109 S.Ct. 2841. "By control we mean that the materials must have come into the agency's possession in the legitimate conduct of its official duties." *Id.* The FOIA applies only to records that have in fact been ob-

tained, and not to records that merely could have been obtained, by the agency. *Id.* at 144, 109 S.Ct. 2841. The relevant issue is whether a FOIA agency has created or obtained the material sought, not whether the organization from which the documents originated is itself covered by the FOIA. *Id.* at 146, 109 S.Ct. 2841.

■ Records of a nonagency can become agency records by contract. *Forsham,* 445 U.S. at 181, 100 S.Ct. 977. For instance, "Congress could have provided that the records generated by a federally funded grantee were federal property even though the grantee has not been adopted as a federal entity." *Id.* at 180, 100 S.Ct. 977. Under this test, it appears that records that are contractually owned by the government are agency records regardless of whether they are physically in the government's possession, because they have been obtained by the government and are within the government's control.

■ The burden is on the agency to demonstrate that the materials sought are not agency records or have not been improperly withheld. *Tax Analysts I,* 492 U.S. at 142 n. 3, 109 S.Ct. 2841. Placing the burden of proof upon the agency puts the task of justifying the withholding on the only party able to explain it. *Id.*

### B.

#### 1.

The Court begins by examining who was in control of CLERVER and the related CLERVER records on December 8, 1993, the date of Gilmore's FOIA request. The contracts between DOE and Sandia for the operation of SNL provide that, subject to exceptions not relevant here, all records acquired or generated by Sandia in its performance of the contract are the property of the government. (Index to Exs. ("Index"), Vol. II, Ex. C, app. B, art. B–XXXI at B65; *id.* Vol. I, Ex. B, ¶ H–18(a) at 16.) The contracts also provide that the government will control the rights to all intellectual property created pursuant to the contracts, but that Sandia can request that it be permitted to retain title if it intends to take reasonable

steps to commercialize the intellectual property that it has created. (*id.* Vol. II, Ex. C, app. D, pt. II, ¶ 3 at D11–12 and ¶ 20 at D25; *id.* Vol. I, Ex. B, ¶ 63(b)(1)(i) at I–65, and ¶ 63(e) at I–67.) If permission to retain title is granted, the government receives a nonexclusive license to use the intellectual property on behalf of the United States. (*Id.* Vol. II, Ex. C, app. D, pt. II, ¶ 15 at D23; *id.*, Vol. I, Ex. B, ¶ 63(e)(1)(iii)(C) at I–69.) On July 2, 1993, DOE granted permission for Sandia to assert copyright in the CLERVER software. (Elliott Decl. Ex. E ¶ 12.) Previously, in 1992, the government also had assigned to Sandia the title to a patented invention that is incorporated into CLERVER. (*Id.* ¶ 14.)

Accordingly, on December 8, 1993, the date of Gilmore's FOIA request, the government owned all records relating to the development of CLERVER, and owned a nonexclusive license to use CLERVER itself. Sandia owned the copyright in CLERVER, which gave it the exclusive right, subject to the license retained by the government, to make copies of CLERVER and to distribute it to the public. 17 U.S.C. § 106. Sandia also owned exclusive rights in a patented invention that is incorporated into CLERVER, subject to a license to the government. *Id.*

The government does not, however, own CLERVER itself, but merely possesses a license to use it for government purposes. At least one recent case has found that the government does not control a record for FOIA purposes if it does not have unrestricted use of it. *See Tax Analysts v. United States Dep't of Justice*, 913 F.Supp. 599 (D.D.C.1996), *aff'd without opinion*, 107 F.3d 923 (D.C.Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997) ("*Tax Analysts II*").[1]

 In *Tax Analysts II*, the plaintiff had submitted a FOIA request seeking to compel

the United States Department of Justice ("DOJ") to disclose its JURIS electronic legal research database. *Id.* at 600. The DOJ refused to disclose the portion of JURIS that was provided to it by West Publishing Company on the ground that it either was not an agency record or was confidential commercial information excluded from disclosure by FOIA Exemption 4. *Id.* West had granted the DOJ a nonexclusive license for limited use of the JURIS materials, which specifically provided that West remained the exclusive owner of the materials. *Id.* at 604. The court focused on the definition of "control" under the FOIA. The court found that although the Supreme Court had stated that "[b]y control, we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties," it did not suggest that mere possession was synonymous with control. *Id.* at 602 (quoting *Tax Analysts I*, 492 U.S. at 144, 109 S.Ct. 2841.) Indeed, the Court had cited approvingly an earlier case in which it had declined to hold that the mere physical location of the records in a government agency rendered them agency records. *Id.* (citing *Kissinger*, 445 U.S. at 157, 100 S.Ct. 960). In the district court's view, the key element of "control" was whether the records at issue were subject to the free disposition of the agency. *Id.* at 603 (citing *Goland v. CIA*, 607 F.2d 339, 347 (D.C.Cir.1978)). The court found that "although DOJ certainly possessed the West-provided data, its right to use, transfer and/or dispose it was greatly restricted, and thus DOJ did not 'control' the data in any common sense reading of that word." *Id.* at 607. Thus, the West-provided database materials were not agency records within the meaning of the FOIA. *Id.* But see *Weisberg v. United States Dep't of Justice*, 631 F.2d 824, 827–28 (D.C.Cir.1980) (photographs taken at the scene of Martin Luther King's assassination were agency records even though copyrighted by *Time* magazine).[2] As

---

1. To distinguish this case from the Supreme Court's 1989 *Tax Analysts* decision, the Court will refer to this case as *Tax Analysts II*, and to the Supreme Court case as *Tax Analysts I*. Other than the similarity in names, the two cases are not related.

2. As *Weisberg* and *Tax Analysts II* both arise out of the D.C. Circuit, the Court presumes that *Tax Analysts II* provides the current test in that circuit for analyzing whether a document is an agency record under the FOIA. The Court also questions the continuing validity of the analysis in *Weisberg* now that the Supreme Court has

DOE's right to use CLERVER is similarly restricted, the Court finds that DOE lacks sufficient control over CLERVER to make it an agency record of DOE.

### 2.

It is undisputed that CLERVER and its related documentation were in the physical possession of Sandia on the date of Gilmore's FOIA request. The Court turns to whether Sandia can be considered a government agency. Under the FOIA, the term "agency" includes "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f). At the time CLERVER was developed, Sandia was owned in its entirety by American Telephone and Telegraph Company. It is currently 100 percent owned by Lockheed Martin. Accordingly, the only definition of "agency" that might conceivably apply to Sandia is that of a government controlled corporation.

 Whether an entity should be considered a government controlled corporation is determined on a case-by-case basis. *Irwin Mem'l Blood Bank of San Francisco Med. Society v. American Nat'l Red Cross*, 640 F.2d 1051, 1053 (9th Cir.1981). The definition of "government controlled corporation" excludes corporations that receive appropriated federal funds, but are neither chartered nor controlled by the federal government. *Id.* at 1054. A substantial degree of federal control or supervision must be demonstrated before an entity can be charactered as federally controlled. *Id.* at 1054–55.

In *Irwin*, the Ninth Circuit found that the American National Red Cross ("Red Cross") was not a government controlled corporation because its employees were not considered employees of the United States, the United States does not appropriate funds for the Red Cross, although the Red Cross receives money from government contracts and specific purpose grants, and government officials

do not direct its everyday affairs. *Id.* at 1056. The court found not to be determinative the Red Cross's use of government buildings, the requirement that it submit financial reports to the Secretary of Defense, and the government's power to appoint eight of the fifty members of the Red Cross' Board of Governors. *Id.* at 1056–57. The court concluded that although the Red Cross is "undoubtedly a close ally" of the United States, "its operations are not subject to substantial federal control or supervision." *Id.* at 1057–58. *See also Public Citizen Health Research Group v. Department of HEW*, 668 F.2d 537 (D.C.Cir.1981) (Professional Standards Review Organization that provides oversight for Medicare and Medicaid programs found not to be a government controlled corporation); *Dong v. Smithsonian Inst.*, 125 F.3d 877 (D.C.Cir.1997) (Smithsonian not a government controlled corporation); *Ehm v. National R.R. Passenger Corp.*, 732 F.2d 1250 (5th Cir.1984) (Amtrak not a government controlled corporation).

The Federal Home Loan Mortgage Corporation ("FHLMC") was found to be a government controlled corporation in *Rocap v. Indiek*, 539 F.2d 174 (D.C.Cir.1976). The court found that the FHLMC was subject to substantial federal control over its day-to-day operations, *id.* at 177, and noted that the FHLMC is federally chartered, its Board of Directors is presidentially appointed, it is subject to federal supervision and control over its business transactions, it is subject to federal auditing and reporting requirements, it is expressly designated as an agency, and its employees are officers and employees of the United States. *Id.* at 180. Like other agencies, it is empowered to make and enforce bylaws, rules and regulations necessary to carry out the purposes of its enabling act. *Id.*

It is undisputed that none of Sandia's employees receive any federal salaries or federal benefits. The contract between DOE and Sandia that was in effect at the time of Gilmore's FOIA request specifically provides that "[p]ersons employed by the Contractor

---

made it clear, in *Tax Analysts I,* that an agency record can only exist where the government con-

trols it.

shall be and remain employees of the Contractor, and shall not be deemed employees of DOE or the Government[.]" (Index, Vol. I, Ex. B, attachment 1, pt. III, § J, app. A at A–1.) Although Sandia uses SNL, a government-owned facility, to conduct research, the management who run the day-to-day operations of SNL are Sandia employees, not employees of the federal government.

Sandia is incorporated in Delaware, New Mexico, Nevada, Virginia, and Texas under state law, and was not established pursuant to federal law. Although the members of the board of directors and other key personnel must be acceptable to DOE, it does not select people for those positions. No member of the current board of directors of Sandia, which consists of prominent scientists and researchers, was recommended or chosen by DOE, nor does any DOE employee sit on the board. Sandia retains complete autonomy in implementing policies for the company, as long as they are within the terms and conditions of the contract between it and DOE. DOE does not participate at all in the formulation of policies to guide Sandia in conducting its business, other than its participation in establishing the directives set forth in the parties' negotiated contract.

On the other hand, there have been complaints that DOE micromanages the SNL laboratories. (Index, Vol. I, Ex. B at 78.) In addition, Lockheed Martin cannot transfer control of Sandia to another party without DOE's permission. At the end of the contract period, DOE retains the right to buy all shares of Sandia, require the resignation of the board of directors, and transfer the shares to a new contractor. (*Id.* attachment 1 at 13.) This demonstrates only that DOE retains the ultimate authority to change the private contractors who oversee operation of the SNL; it does not show that DOE retains day-to-day supervision over the contractor's operation of SNL. Similarly, DOE's regular reviews of Sandia's performance to ensure that contractual requirements are being complied with does not constitute day-to-day supervision. There is a great deal of difference between DOE's prudent system of checks and balances, and actual control of Sandia.

 The Court finds that there is no dispute of material fact and that the facts demonstrate that Sandia is not a government-controlled corporation, as a matter of law. Unlike the Red Cross and the Smithsonian, both of which are run by a certain percentage of federal appointees or officials but were found not to be government controlled, no employee of Sandia is a federal employee, and DOE has no control over Sandia's employees. Like the Red Cross and the Smithsonian, Sandia receives federal funding, but is not subject to day-to-day federal supervision. DOE's detailed contractual objectives for the operation of SNL by Sandia do not translate into the day-to-day supervision and control required for Sandia to be deemed a government-controlled corporation. Accordingly, the Court finds that Sandia is not a government agency for FOIA purposes.

### 3.

 Even if DOE actually owned and controlled CLERVER at the time of Gilmore's FOIA request, CLERVER still would not be an agency record subject to the FOIA because CLERVER does not illuminate the structure, operation, or decision-making structure of DOE. In *Tax Analysts II,* the court found, as an alternate basis for its holding that the West database materials were not agency records, that the data was not the type of information that Congress intended to make available to the public under the FOIA, because it provided no information about the structure, operation or decision-making procedures of the DOJ. *Id.*[3]

Ninth Circuit authority is in accord. In *Baizer v. United States Department of the Air Force,* 887 F.Supp. 225 (N.D.Cal.1995) (Smith, J.), the plaintiff requested that the Air Force provide the decisions of the United States Supreme Court in electronic form, from the JURIS database, but specifically excluded from his request any privately owned information. *Id.* at 226. The court

---

3. This definition of "agency record" does not appear in the FOIA statute, but is a court-created

limitation derived from the legislative history.

found that because the material did not provide any insight into agency decision making, it did not constitute an agency record. *Id.* at 228. The court distinguished the Supreme Court's opinion in *Tax Analysts I*, and relied on an earlier Ninth Circuit opinion, *SDC Development Corp. v. Mathews*, 542 F.2d 1116 (9th Cir.1976).

In *Tax Analysts I*, the Supreme Court held that the Tax Division of the DOJ was required under the FOIA to produce copies of opinions in district court tax cases that it received in the course of litigating tax cases on behalf of the federal government. *Tax Analysts I*, 492 U.S. at 138, 109 S.Ct. 2841. In *Baizer*, Judge Smith noted that the tax opinions at issue in *Tax Analysts I* were integrated into the Tax Division's active case files, and were utilized by the Tax Division in making decisions whether to appeal or file post-trial motions in those very cases when the government lost, and to collect judgments when the government won. 887 F.Supp. at 228 (citing *Tax Analysts I*, 492 U.S. at 138–39, 109 S.Ct. 2841, and *Tax Analysts v. United States Department of Justice*, 845 F.2d 1060, 1068 (D.C.Cir.1988), *aff'd* 492 U.S. 136, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989)). The Ninth Circuit had previously found that a research database was not an agency record because it did not reflect the structure, operation, or decision-making functions of the agency. *SDC Development*, 542 F.2d at 1120; *see also Tax Analysts I*, 492 U.S. at 141, 109 S.Ct. 2841 (affirming the Court of Appeals' decision that the tax decisions were agency records because "the Department has the discretion to use the decisions as it sees fit, because the Department routinely uses the decisions in performing its official duties, and because the decisions are integrated into the Department's official case files"). Thus, the court in *Baizer* found that "[i]f an agency integrates material into its files and relies on it in decision making, then the agency controls the material." 887 F.Supp. at 228.

The Air Force simply does not control the decisions of the Supreme Court in the same manner that the Tax Division controlled the decisions it received as a party litigant, integrated into its case files, and used to prosecute appeals. As a result, the database of Supreme Court decisions is not an agency record.

*Id.* at 228–29.

Similarly, here, CLERVER illuminates nothing about DOE's decision-making process and thus is not an agency record subject to disclosure under the FOIA. Cases in which computer software has been found to be an agency record subject to FOIA disclosure are distinguishable on their facts. In *Cleary, Gottlieb, Steen & Hamilton v. Department of Health & Human Services.*, 844 F.Supp. 770 (D.D.C.1993), the court found that a software program was an agency record where it was necessary to understand and manipulate the data in a government study. *Id.* at 781–782. In *Windels, Marx, Davies & Ives v. Department of Commerce*, 576 F.Supp. 405 (D.D.C. 1983), the software program at issue was used by the government agency to determine how to perform audits. Here, the parties have stipulated that CLERVER was not designed to be unique or responsive to any particular database, not does CLERVER contain any database of information about DOE's operations. (Joint Statement of Undisputed Facts No. 24.) CLERVER does not illuminate anything about DOE's structure or decision-making process.

Gilmore cites a number of cases predating *Tax Analysts I* for the proposition that a record does not have to expose the government decision-making process to be an agency record under the FOIA. All of these cases did, in fact, involve records that were used in government decision making. In *Stephenson v. Internal Revenue Service*, 629 F.2d 1140 (5th Cir.1980), the plaintiff sought tax records from the IRS that were being used in civil and criminal investigations of the plaintiff. In *Irons & Sears v. Dann*, 606 F.2d 1215 (D.C.Cir.1979), the documents at issue were decisions of the United States Patent and Trademark Office. In *Weisberg*, the court expressly found that photographs of the scene of the Martin Luther King assassination permitted evaluation of the FBI's performance in investigating the King assassination and thus reflected the operation and decision-making functions of the agency. 631 F.2d at 828.

Following *Tax Analysts I* and *Tax Analysts II, SDC Development,* and *Baizer,* the Court finds that CLERVER would not be an agency record even if DOE owned or controlled it, because it does not provide information about the government's operation, structure, or decision-making processes.

4.

■■■■ Even if the CLERVER software could be considered an agency record, it would still be exempt from disclosure under FOIA Exemption 4. Exemption 4 provides that "trade secrets and commercial or financial information obtained from a person and privileged or confidential" need not be disclosed pursuant to a FOIA request. 5 U.S.C. § 552(b)(4). In evaluating whether a request for information falls within the scope of a FOIA exemption, the Court must balance the public interest in disclosure against the interest Congress intended the exemption to protect. *United States Dep't of Defense v. Federal Labor Relations Auth.,* 510 U.S. 487, 495, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994). The only relevant public interest ·in disclosure to be weighed in this balancing test is the extent to which disclosure would serve the core purpose of the FOIA of contributing significantly to public understanding of the operations or activities of the government. *Id.; Bibles v. Oregon Natural Desert Ass'n,* 519 U.S. 335, 117 S.Ct. 795, 795, 136 L.Ed.2d 825 (1997).

■■■■ A record is confidential for purposes of Exemption 4 "if disclosure is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *GC Micro Corp. v. Defense Logistics Agency,* 33 F.3d 1109, 1112 (9th Cir.1994) (quoting *National Parks & Conservation Ass'n v. Morton,* 498 F.2d 765 (D.C.Cir.1974)). The term "person" as used in Exemption 4 refers to a wide range of entities including corporations, associations and public or private organizations other than agencies. *Allnet Communication Servs. v. FCC,* 800 F.Supp. 984, 988 (D.D.C. 1992) (citing *Critical Mass Energy Project v. NRC,* 830 F.2d 278, 281 n. 15 (D.C.Cir.1987)).

The test for confidentiality is an objective one. *GC Micro,* 33 F.3d at 1113. The party seeking to withhold information under a FOIA exemption bears the burden of proving that the information falls within the claimed exemption. *Id.* "[E]vidence revealing (1) actual competition and (2) a likelihood of substantial competitive injury is sufficient to bring commercial information under Exemption 4." *Id.*

Here, both prongs of the test for confidentiality are satisfied. At the time CLERVER was developed, Sandia was owned in its entirety by American Telephone and Telegraph Company. It is now 100 percent owned by Lockheed Martin. The contract between DOE and Sandia for the operation of SNL, which was in effect at the time CLERVER was created, provided that one of the objectives of the contract was to expeditiously and efficiently transfer technology· developed at SNL to domestic industry, in order to contribute to national well-being by aiding United States industrial competitiveness. (Index, Vol. I, Ex. A, app. D, General, ¶¶ 1–2 at D3.) Sandia was required to "undertake a vigorous licensing program whereby Sandia Corporation technology is moved expeditiously into the commercial marketplace." (*Id.,* app. D, pt. I, ¶ 2 at D4.) Pursuant to this mandate, Sandia has licensed CLERVER to SunSolutions, Inc., the University of New Mexico, the University of Delaware, and Sterling Winthrop, Inc. (Stanley Decl. Ex. G ¶¶ 7–8; Second Stanley Decl. Ex. 4 ¶ 3.) It has received inquiries from other companies, and is engaged in ongoing efforts to market CLERVER to other commercial entities. (Stanley Decl. Ex. G ¶¶ 7–8; Second Stanley Decl. Ex. 4 ¶ 3.) Under the license granted to Sun Solutions, Sandia has received approximately $164,000 in royalties, and a portable computer valued at $62,000. (Stanley Decl. Ex. G ¶ 10; Second Stanley Decl. Ex. 4 ¶ 2.) Sandia owns the copyright on CLERVER, but gave the government a limited license to use CLERVER for government purposes only.

■■■ There can be no doubt that disclosure of CLERVER to Gilmore so that he can distribute CLERVER on the Internet will cause substantial commercial harm to Sandia

and its current owner Lockheed Martin. If the technology is freely available on the Internet, there is no reason for anyone to license CLERVER from Sandia, and the value of Sandia's copyright effectively will have been reduced to zero.[4] There also can be no doubt that corporations will be less likely to enter into joint ventures with the government to develop technology if that technology can be distributed freely through the FOIA, irrespective of any intellectual property rights retained by the corporations. Accordingly, the government's access to such information is likely to be impaired. Moreover, there is no countervailing public interest in disclosure because CLERVER sheds no light whatsoever on DOE's performance of its duties. As both of the prongs of the test for confidentiality under FOIA Exemption 4 are met, the FOIA would not require that CLERVER be disclosed, even if CLERVER were an agency record.

For all of these reasons, Gilmore's FOIA request for CLERVER was properly denied.

5.

■ Because the government, by contract, owns the records relating to the development of CLERVER, those records are agency records under the FOIA, whether or not Sandia or SNL are themselves government agencies. *Forsham*, 445 U.S. at 180, 100 S.Ct. 977. The parties have stipulated, however, that the only materials that are currently at issue in this litigation are the CLERVER software and its technical documentation and associated materials in the possession of Sandia Corporation. It appears that Gilmore has abandoned his request for documents related to CLERVER

that do not include CLERVER's technical documentation. In any event, because DOE owns the technical documentation, those records must be disclosed under the FOIA unless they fall within the scope of one of the enumerated FOIA exemptions. *Robbins Tire & Rubber Co.*, 437 U.S. at 221, 98 S.Ct. 2311.

■ For the same reasons Gilmore's FOIA request for CLERVER was properly denied, his request for the CLERVER technical documentation owned by DOE was also properly denied under FOIA Exemption 4. The information in those documents reflects confidential information, the disclosure of which would cause commercial damage to Sandia and Lockheed Martin, and would likely impair the government's access to such information in the future.

Gilmore attempts to rely on an unpublished DOE internal order to force the government to disclose the CLERVER documentation. DOE Order 1700.1 provides that "[w]here a contract with DOE stipulated that any documents relating to work under the contract shall be the property of the Government, such records shall be considered to be agency records and subject to disclosure under the FOIA." (Tien Decl. Ex. R.) This order adds nothing to the Supreme Court's *Forsham* opinion, in which the Court noted that records of a nonagency could become records of the agency by contract, 445 U.S. at 180, 100 S.Ct. 977, nor does it add anything to the contractual language providing that all records created pursuant to the contract between DOE and Sandia are the property of DOE.[5] Although these records were

---

**4.** Although Gilmore argues that there is no showing of substantial commercial harm because Sandia has received only relatively meager royalties, there is a presumption of irreparable harm when a copyright is infringed. *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 827–28 (9th Cir.1997).

**5.** The Supreme Court has never held that a record owned by a government agency must also be in its possession in order to be considered an agency record under the FOIA. Although the Supreme Court, in *Forsham*, held that a mere right of access to documents did not convert those documents into agency records until that right had been exercised, that discussion was in

the context of records owned by a federal grantee, not records owned by the government itself. 445 U.S. at 180–81, 100 S.Ct. 977. The Court specifically distinguished that discussion from the situation where the records were defined as government property by contract. *Id.* Accordingly, it appears that documents owned by a government agency may be agency records under the FOIA regardless of where they are stored. *See Kissinger*, 445 U.S. at 151, 100 S.Ct. 960 (FOIA applies where agency has possession *or* control of record). Certainly, as a policy matter, the government should not be able to avoid all of its FOIA obligations merely by storing its records offsite. Contrary to both parties' positions, then, the Court finds that DOE Order 1700.1 does not

owned by DOE at creation, however, DOE later transferred copyright in CLERVER to Sandia, before the date of Gilmore's FOIA request. Sandia thus has the exclusive right, subject to the license retained by the government, to make copies of CLERVER and to distribute it to the public. 17 U.S.C. § 106.

■ At that point, DOE no longer had control over the technical documentation of CLERVER because it could not distribute the documents to the public without violating Sandia's copyright and the terms of DOE's own license to use CLERVER. Accordingly, on the date of Gilmore's FOIA request, the CLERVER technical documentation was no longer an agency record under the FOIA because the government no longer controlled its dissemination. *See Tax Analysts II,* 913 F.Supp. at 607.

Alternately, the documentation contains confidential information of Sandia that could not be disclosed without causing commercial harm to Sandia and Lockheed Martin, or without impairing the government's access to such information in the future. As a result, even if the technical documentation was an agency record, it would be exempt from disclosure under FOIA Exemption 4.[6]

For all of these reasons, Gilmore's FOIA request for the CLERVER technical documentation was properly denied by DOE.

### B.

Gilmore also argues that DOE has a pattern and practice of late responses to FOIA requests. He seeks a declaratory judgment that this practice is unlawful and seeks an order enjoining DOE from failing to process FOIA requests within the statutory period. By statute, an agency shall issue a decision on a FOIA request within ten business days. 5 U.S.C. § 552(a)(6)(A)(i). In unusual circumstances, the ten-day period may be extended for an additional ten days. 5 U.S.C. § 552(a)(6)(B). Any person whose request was not answered in a timely manner is deemed to have exhausted his administrative remedies, and may seek redress in court. 5 U.S.C. § 552(a)(6)(C). "If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records." *Id.* DOE's own regulations also provide for these deadlines, and further provide that if DOE is unable to respond within the statutory period, it shall inform the requester of the reason for the delay and the date upon which a determination may be expected to be made. 10 C.F.R. § 1004.5(d) (1997). Gilmore's FOIA request was filed on December 8, 1993. DOE first denied his request by letter dated May 2, 1994, nearly six months later.

■ The Supreme Court, in *Tax Analysts I,* noted that "[e]ven when an agency does not deny a FOIA request outright, the requesting party may still be able to claim 'improper' withholding by alleging that the agency has responded in an inadequate manner." *Tax Analysts I,* 492 U.S. at 151 n. 12, 109 S.Ct. 2841 (referring to time limit violations for FOIA compliance as set forth in 5 U.S.C. § 552(a)(6)(C)). The Ninth Circuit similarly has recognized that a party may bring a claim for a pattern and practice of unreasonable delay in responding to FOIA requests. *See Mayock v. Nelson,* 938 F.2d 1006, 1006 (9th Cir.1991); *Long v. United States,* 693 F.2d 907, 909–10 (9th Cir.1982); *Exner v. FBI,* 542 F.2d 1121, 1122 (9th Cir. 1976). Accordingly, the Court finds that even though Gilmore's FOIA request was

add anything to the law that was already in existence at the time Gilmore's FOIA request was made.

**6.** As a result, the applicability of the Carter Memorandum is irrelevant under the facts of this case. The Carter Memorandum modified DOE Order 1700.1 to provide that "[w]here a contract with DOE stipulates that any records relating to work under the contract shall be the property of the Government, such records shall be considered to be agency records and subject to disclosure under the FOIA, *except for records that contain information or technical data having commercial value as defined below."* (Tien Decl. Ex. S) (emphasis added). Gilmore argues that the Carter Memorandum had no effect because it was not published in the Federal Register. As explained above, however, regardless of whether the Carter Memorandum was effective, the CLERVER technical documentation was not subject to disclosure under the FOIA.

properly denied, Gilmore has an independent cause of action against DOE for violating the FOIA by failing to respond to his request within the statutory time limits. *See Payne Enter., Inc. v. United States,* 837 F.2d 486, 491 (D.C.Cir.1988) (internal quotation marks deleted) (quoting *Lybarger v. Cardwell,* 577 F.2d 764, 767 (1st Cir.1978)) ("Courts have long recognized that there may very well be circumstances in which prolonged delay in making information available or unacceptably onerous opportunities for viewing disclosed information require judicial intervention.")

The leading case on enforcement of the FOIA time limits is *Open America v. Watergate Special Prosecution Force,* 547 F.2d 605 (D.C.Cir.1976). By statute, an agency may be excused from compliance with the FOIA time limits where exceptional circumstances exist and the agency is proceeding with due diligence to process all requests. 5 U.S.C. § 552(a)(6)(C). In *Open America,* the District of Columbia Circuit found that exceptional circumstances exist when the agency meets a three-part test: (1) when the agency is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, (2) when the existing resources are inadequate to deal with the volume of such requests within the time limits set forth in the FOIA, and (3) when the agency can show that it is exercising due diligence in processing the requests. 547 F.2d at 616. That court also held that an agency complies with the FOIA by making a good-faith effort to comply with FOIA requests within as short a time as possible by assigning all requests on a first-in, first-out basis, except where exceptional need or urgency is shown. *Id.; see also Exner,* 542 F.2d at 1123 (adopting concurring opinion in *Open America*). This last test, however, appears to apply only where a single request is at issue. Where a pattern and practice of late responses is alleged, courts have held that a normal, predictable workload cannot constitute "exceptional circumstances," at least without a showing that the agency unsuccessfully sought more FOIA resources from Congress or attempted to redirect its existing resources. *Mayock v. INS,* 714 F.Supp. 1558, 1565–66 (N.D.Cal.1989) (Legge, J.), *rev. on other grounds,* 938 F.2d

1006 (9th Cir.1991); *see also Morrow v. FBI,* 2 F.3d 642, 644 (5th Cir.1993); *Caifano v. Wampler,* 588 F.Supp. 1392, 1394 (N.D.Ill. 1984).

Whether exceptional circumstances exist and whether an agency is exercising due diligence in processing FOIA requests are inherently factual questions. The parties have not briefed the issue in great detail, having spent most of their briefing arguing why CLERVER is or is not subject to disclosure under the FOIA. Further briefing on the extent of DOE's compliance with the FOIA time limitations is required.

DOE spent nearly six months processing Gilmore's FOIA request. Gilmore has submitted evidence of ten other lengthy delays by DOE in processing FOIA requests, which he obtained from DOE's World Wide Web site. (*See* Tien Decl. Ex. Z.) In all ten of these examples, DOE took more than six months to issue an initial determination, and in one instance took nearly seven years. *Id.* Gilmore states, however, that these ten examples were selected from a universe of more than 200 decisions available on the web site. (Tien Decl. ¶ 1.) Gilmore does not state whether the examples he selected were representative of the entire universe of DOE FOIA determinations, or whether in the other 190 decisions, DOE responded in a timely manner.

DOE evades addressing the issue head-on, and does not provide declarations suggesting that it generally responds to FOIA requests in a timely manner, or in the alternative, explain why exceptional circumstances and due diligence exist for its processing delays. On the factual record before the Court, summary judgment must be denied for both parties. The Court may well be able to rule on the issue in a further summary judgment motion, without the need for a trial, if it is provided with a more substantial factual record.

The Court orders the parties to provide further briefing, as follows:

1. Gilmore shall file a proposed form of injunction, so that DOE and the Court know precisely what relief is being sought. The proposed form of injunction must be filed

within ten days of the filing of this Memorandum Decision and Order.

2. The parties shall file new cross-motions for summary judgment on the issue of whether DOE has a pattern and practice of late responses to FOIA requests. The parties shall meet and confer to set up a briefing schedule for these motions, and must file a briefing schedule with the Court no later than thirty days from the filing of this Memorandum Decision and Order.

3. Gilmore has complained that he has not been permitted to obtain discovery on DOE's pattern and practice of responding to FOIA requests. If Gilmore needs such discovery to prepare his motion or to respond to DOE's motion, he must file a Rule 56(f) declaration itemizing the discovery he feels is necessary to adequately address the issues.

### C.

■ Gilmore also claims that DOE's initial determination of his FOIA request was so inadequate that it deprived him of a meaningful appeal. This claim is meritless. DOE's initial determination denied Gilmore's request because CLERVER was not an agency record and because even if it were an agency record it would be exempt under FOIA Exemptions 4 and 5. The Court has found that CLERVER and its related documentation are not agency records and would be exempt from disclosure under FOIA Exemption 4 even if they were agency records. These are precisely the grounds relied upon by DOE in denying Gilmore's request. Summary judgment on this claim is granted for DOE.

### D.

■ Gilmore challenges DOE's policy on disclosure of contractor records as inconsistent with the FOIA. The contractor records policies set forth in DOE Order 1700.1 and the Carter Memorandum now have been published, in a somewhat different form, in the Code of Federal Regulations, as of De-

7. Their revision and publication was a result of United States District Court Judge Edward Rafeedie's decision that DOE Order 1700.1 and the Carter Memorandum were substantive rules that were required to be published in the Federal

cember 12, 1994.[7] 10 C.F.R. § 1004.3(e) (1997). The regulation provides:

(e) Contractor Records. (1.) When a contract with DOE provides that any records acquired or generated by the contractor in its performance of the contract shall be the property of the Government, DOE will make available to the public such records that are in the possession of the Government or the contractor, unless the records are exempt from disclosure under 5 U.S.C. § 552(b)(2).

(2) Notwithstanding paragraph (e)(1) of this section, records owned by the Government under contract that contain information or technical data having commercial value as defined in § 1004.3(e)(4) or information for which the contractor claims a privilege recognized under federal or state law shall be made available only when they are in the possession of the Government and not otherwise exempt under 5 U.S.C. 552(b).

(3) The policies stated in this paragraph:

(i) Do not affect or alter contractors' obligations to provide to DOE upon request any records that DOE owns under contract, or DOE's rights under contract to obtain any contractor records and to determine their disposition, including public dissemination; and

(ii) Will be applied by DOE to maximize public disclosure of records that pertain to concerns about the environment, public health or safety, or employee grievances.

(4) For purposes of § 1004.3(e)(2), "technical data and information having commercial value" means technical data and related commercial or financial information which is generated or acquired by a contractor and possessed by that contractor, and whose disclosure the contractor certifies to DOE would cause competitive harm to the commercial value or use of the information or data.

10 C.F.R. § 1004.3(e) (1997).

The Court has already found that DOE Order 1700.1 did not conflict with existing

Register. *Committee To Bridge The Gap v. DOE,* No. CV 90–3568–ER, slip op. at 6–7 (C.D.Cal. Oct. 11, 1991) (unpublished). *See* 59 Fed.Reg. 63,882, 63,883 (1994).

FOIA law. Gilmore has not provided, in opposition to DOE's motion for summary judgment, any additional reason why the contractor records policy set forth in the Code of Federal Regulations is in contravention of the FOIA. Indeed, it is not clear to the Court that Gilmore even has standing to challenge the regulation, as it has not been applied to him, and he has shown no likelihood that it will be applied to him in the future. Accordingly, the Court grants DOE's motion for summary judgment on this issue, and finds that Gilmore has not raised an issue of material fact as to the validity of 10 C.F.R. § 1004.3(e).

### III.

For the reasons set forth above,

IT IS HEREBY ORDERED that:

1. Summary judgment is GRANTED for DOE, and DENIED for Gilmore, on Gilmore's claim that CLERVER and its related documentation was improperly withheld from disclosure under the FOIA;

2. Summary judgment is DENIED for both parties on the issue of whether DOE has a pattern and practice of untimely responses to FOIA requests.

a. Gilmore shall file a proposed form of injunction within ten days of the filing of this Memorandum Decision and Order, so that DOE and the Court know precisely what relief is being sought on this claim.

b. The parties shall file new cross-motions for summary judgment on the issue of whether DOE has a pattern and practice of late responses to FOIA requests, and shall submit declarations providing factual support for their positions. The parties shall meet and confer to set up a briefing schedule for these motions, and shall file with the Court a copy of this proposed briefing schedule within thirty days of the filing of this Memorandum Decision and Order.

c. If Gilmore's inability to obtain discovery on DOE's practice in complying with FOIA requests prevents him from filing the necessary factual support for his motion, he shall file a declaration, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure,

itemizing the discovery he feels is necessary to adequately address the issue.

3. Summary judgment is GRANTED for DOE, and DENIED for Gilmore, on Gilmore's claim that DOE's initial determination of his FOIA request was so inadequate that it denied him a meaningful appeal.

4. Summary judgment is GRANTED for DOE on Gilmore's claim that DOE's contractor records regulation, 10 C.F.R. § 1004.3(e), violates the FOIA.